Houghton *v.* Adams.

[New-York General Term, November 6, 1854. *Mitchell, Morris* and *Clerke,* Justices.]

———

## Houghton and another *vs.* Adams.

Where a party sells to another, at the usual rate of discount, the notes of a bank, which at the time of such sale has stopped payment, the failure of the bank not being known, however, to either party, and the seller, on being informed of it, promises to refund the consideration received, an action will lie.

In such a case there is a moral obligation to refund; and a parol promise to do so, although not binding in law as a promise of payment, is conclusive evidence as an admission of fact.

This was an appeal by the plaintiffs from a judgment entered upon the report of a referee. The opinion of the court states the material facts.

*A. Wakeman,* for the appellants. I. The bank, at the time the bills were passed to the plaintiffs, had already failed, and the loss actually existed at that time, but unknown to both parties; and it is a well settled principle of law, that the loss is upon him who was the owner at the time such loss happened, if both parties were ignorant of the loss at the time of making their contract. II. Upon well settled principles of equity, applicable to

mutual mistake of facts, the defendant should have redeemed the bills, and have made good the loss to the plaintiffs. (*Markle* v. *Hatfield*, 2 *John*. 455. 1 *Story's Eq. Jur*. § 140, 142, 143 *and* 144. *Hitchcock* v. *Giddings*, 4 *Price*, 135. 1 *Pothier on Obligations*, 495, *margin*. *Jones* v. *Ryde*, 5 *Taunt*. 488. *Mowatt* v. *Wright*, 1 *Wend*. 360. *Wheedon* v. *Olds*, 20 *Id*. 174. *Canal Bank* v. *Bank of Albany*, 1 *Hill*, 287, 292, 300. *Thomas* v. *Todd*, 6 *Hill*, 340. *Bank of Commerce* v. *Union Bank*, 3 *Comst*. 230.) III. The law is well settled, that when the note of a third person is received for a pre-existing debt or a contemporaneous consideration, the risk of his insolvency is upon the payer, unless there is an agreement express or implied that the payee takes it at his own risk. (*Story on Prom. Notes*, §§ 104, 117. *Chitty on Bills*, 9th ed. 1840, *pp*. 244–247.) This same principle is applicable to bank notes, except that the transferree, if they are good when received, takes them subject to all future risk. IV. That the loss should be borne by the transferrer, and not the transferree, is a correct principle of public policy, and is most consistent with the substantial interests of the community. (*See Mr. Gallatin's Essay on Currency and Banking of the U. S., p*. 29.) V. This doctrine has long since been established and settled in this state in the case of *Lightbody* v. *The Ontario Bank*, decided by Ch. J. Savage, (11 *Wend*. 1,) and affirmed by the court of errors, (13 *Wend*. 101.) This is the doctrine of our ablest elementary writers. (*See Story on Prom. Notes*, § 110. *Chitty on Bills*, 9th ed. *pp*. 384, 385.) It has also been adopted by the supreme court of New-Hampshire. (*See Hogg* v. *Sawyer*, 9 *N. H. Rep*. 365.) And also by the unanimous opinion of the court of appeals in South Carolina. (*See Harley* v. *Thornton*, 2 *Hill*, 500.)

*T. Romeyn*, for the defendant. I. The transaction was not the payment of a debt, nor the purchase of valuable articles, with these bills as money, but a sale of them as choses in action for money. (1.) These bills were foreign bank bills, and therefore are not regarded as money. (2.) They were at a greater rate of discount than even other Maryland bills. (3.) They paid

for these depreciated bills in New-York state money, which our courts treat as cash, in distinction from foreign bank notes. (*Leiscr* v. *Goodrich,* 5 *Cowen,* 186.) II. These bills were and are of some value. It was admitted, on the trial, that during the year 1852, Havre De Grace money had sold for 15 per cent. III. Being of value, they formed a good consideration for a sale ; and there being no fraud, nor warranty, the doctrine of *caveat emptor* applies ; and the transaction was therefore valid. This case is to be distinguished from those in which counterfeit or broken bank bills are given *as cash* in payment of a precedent debt, or on a new purchase. These were not *paid as cash,* but *were sold for cash.* This disposes of the case of *Lightbody* v. *Ontario Bank,* in 11th and 13th Wendell, and other similar cases. This distinction is recognized in these cases. (*See also Story on Bills,* § 225. *Ex parte Blackburne,* 10 *Ves.* 204, *and note. Chitty on Bills,* 243. *Hornblower* v. *Proud,* 2 *B. & Al.* 327. *Rudderow* v. *Huntington,* 3 *Sand.* 256. *Wright* v. *Hart,* 18 *Wend.* 453,) IV. Whether this be called a sale or not, it is plain, from the greater discount, that it was the *intent* of the parties that the *risk* should be on the *plaintiffs.* And they therefore cannot recover. V. The parol promise, which it is averred the defendant made, to take back the bills, was void by the statute of frauds. (1.) The bills had been *sold.* They had been paid for in current money, been received by plaintiffs, and been transmitted to a foreign state on their account. (2.) The promise, therefore, was to *repurchase* them. (3.) Not being in writing, it was void by the statute of frauds. (2 *R. S.* 136, § 3. *Artcher* v. *Zeh,* 5 *Hill,* 200. *Shindler* v. *Houston,* 1 *Comst.* 268. *Whitbeck* v. *Van Ness,* 11 *John.* 414. *Coggill* v. *Am. Exch. Bank,* 1 *Comst.* 116. 1 *Story's Eq.* §§ 149, 150, 151.

*By the Court,* ROOSEVELT, J. This is a controversy arising out of the failure of the Havre De Grace Bank of Maryland, in August, 1850. The plaintiffs were exchange brokers in Wall street. On the 27th of August, the defendant sold and delivered to them, in the ordinary course of business, $190 of the bills of the bank, allowing a discount, which was the then usual rate, of

one per .cent, or one dollar and ninety cents on the whole parcel. The bank, it appears, redeemed its notes regularly throughout the previous day. It did not open on the 27th ; it had failed at or before 10 o'clock of that day, in Maryland. Its bills, those in controversy, were sold by the defendant to the plaintiffs a little after 3 P. M. of the same day. Neither party knew, or, considering the distance, could well have known, of the failure at the time. And the defendant soon after, upon learning the true state of the case and that there had been a mutual mistake, promised, and of course acknowledged the moral obligation, to refund. That promise, he now insists, not having been reduced to writing, is not legally binding. But although not binding in law as a promise of payment, it is conclusive evidence in law as an admission of fact. It shows, beyond dispute, that it was no part of the original contract—a contract which being simultaneously executed required no writing—that for the small consideration of one dollar and ninety cents, the brokers were to take, not only the trouble of collecting the notes of a distant bank, but the risk of their being at the time actually "bad." "Broken bank notes," by a sort of universal understanding, are a different commodity from merely "uncurrent money." And when a person pays out, or sells, a bank note as merely uncurrent, and at a rate corresponding, he expects and understands that in case it turns out that the bank at the time was not only distant but defunct, he is to refund, as in justice and equity he obviously ought, the consideration received.

The *understanding* of the parties, in this as in other cases, when clearly shown, and when there is no formal writing and none required, is the *contract* of the parties ; and that contract, there being nothing unlawful in it, is the judicial measure of the parties' rights. In this view of the case, the report of the referee, in its legal conclusions, against the plaintiff, is erroneous ; and the judgment consequent upon it should therefore be reversed and a new trial ordered, with costs to abide the event : The trial, unless both parties consent to another reference, to be by jury.

[NEW-YORK GENERAL TERM, November 6, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]