## Case No. 6,219.

### In re HAUCK et al.

[17 N. B. R. 158.] [1]

### District Court, D. Iowa. 1878.

BANKRUPTCY—"KNOWLEDGE" UNDER BANKRUPT ACT.

1. A person, being a merchant or trader, is insolvent when unable to pay his debts as they mature in the ordinary course of business.

2. The word "knowledge" in section 35, as amended, of the bankrupt act [18 Stat. 180], means actual knowledge, as contra-distinguished from constructive knowledge.

3. A person having notice of such a state of facts in regard to the financial affairs of the bankrupt as in law constitute insolvency, either as that term denotes when applied to a merchant or trader, or when used in its general and popular sense, must be presumed to have actual knowledge, upon receiving any payment, assignment or conveyance from the bankrupt, that the same is a fraud upon the bankrupt act.

[Cited in Metcalf v. Officer, 2 Fed. 643; Swan v. Robinson, 5 Fed. 295; Harris v. Hanover Nat. Bank, 15 Fed. 788.]

Petition of George H. French, assignee, against Deere & Co., for the recovery of money or property, alleged to have been received by them from said bankrupts, as preferred creditors, and in fraud of the bankrupt act. In January, 1874, A. S. Hauck & Co. commenced doing business in the purchase and sale of agricultural implements at Bedford, Iowa, and continued in said business until the 29th day of December, 1876, on which day they filed their petition in bankruptcy, were adjudged bankrupts, and said George H. French was duly appointed assignee of their estate. On the —— day of ——, 1876, said bankrupts executed to said Deere & Co. their promissory note for nine hundred and sixty dollars and seventy cents, payable on January 1, 1877, the consideration thereof being the purchase price of agricultural implements purchased of said Deere & Co. On the 12th of December, 1876, said Deere & Co. procured from said bankrupts divers promissory notes, known as "farmers' note," which they intended to be applied on said note of nine hundred and sixty dollars and seventy cents as a payment to the amount of four hundred and ninety-seven dollars and twenty-nine cents. It is claimed by said assignee that said "farmers' notes" were so procured by Deere & Co. in fraud of the bankrupt act.

Twomey & Stuyvesant, for assignee.
R. T. McNeal, for Deere & Co.

By D. B. NASH, Register:
It appears from the evidence that said bankrupts were merchants or traders, within the meaning of those words as used in the bankrupt act; hence, in considering the question of their insolvency, the character of

[1] [Reprinted by permission.]

their business becomes material. The term "insolvency," in its general and popular meaning, denotes the insufficiency of the entire assets of an individual to pay his debts. But when the same is applied to a merchant, or trader, it is used in a more restricted sense, and expresses the inability of a party to pay his debts as they become due in the ordinary course of business. Toof v. Martin, 13 Wall. [80 U. S.] 40. In view of the foregoing definition of the term "insolvency," as settled by adjudication, and as applied to a merchant or trader, it is manifest that insufficiency of assets, when ultimately converted into money, to pay all debts, is not necessarily essential to constitute a state of insolvency. The want of time, simply to make such a conversion of assets into money, may constitute the essential element of insolvency. When the financial affairs of a merchant or trader arrive at such a stage of embarrassment as places it beyond his ability to convert his assets into money in time to meet the payment of his liabilities as they mature, and compels him to seek extension of time to enable him to effect such a conversion of his assets, he must be deemed, in purview of the bankrupt act, in a state of insolvency. From and after such a period in his affairs the law contemplates that creditors shall equally share in the distribution of his estate, and any payment, assignment or conveyance, inconsistent with such equitable distribution, must be deemed to be in contravention of the provisions of the bankrupt act, if made within the prescribed limits of time specified therein. But, although such payment, assignment, or conveyance, may have been made contrary to the provisions of said act, yet, as against the party benefited thereby, the same is void only when such party had reasonable cause to believe that the person making the same was insolvent, and knowing that such payment, assignment, or conveyance, was made in fraud of the provisions of said act. Hence, it is obvious, in order to render such payment, assignment, or conveyance void as against the person benefited thereby, there must be shown the following facts: First —That the party making the same was insolvent, or in contemplation of insolvency. Second.—That the same was so made with a view to give a preference. Third.—That the person benefited thereby had reasonable cause to believe such person insolvent at the time, and knowing that such payment, assignment, or conveyance was made in fraud of the provisions of the bankrupt act.

1. In regard to the fact of the insolvency of the bankrupts, the evidence clearly shows the existence of such insolvency, and not only such insolvency as that term denotes when applied to a merchant or a trader, but also such as the same expresses when used in its general and popular meaning, as above explained. Nor do I understand that the fact of such insolvency was sincerely questioned by counsel in argument.

2. Did the said bankrupts assign the notes in question with a view to give a preference? It appears from the testimony of the bankrupts that they were unable to pay their debts as they matured. That both an extension of time, and the advantages of another year's trade, were necessary to enable them to pay their debts. That their property, if then converted into money by legal process, would not have been sufficient to pay their liabilities. That they knew that such was the condition of their affairs at the time. It further appears from the testimony in the case that, within the period of twenty days after the date of said interview, over fourteen thousand dollars of the commercial paper of said bankrupts would mature, and the remainder, about two thousand dollars, during the thirty days next following. Also, that said bankrupts intended to change their business, in view of their financial embarrassments, to a commission business. I am inclined to believe that where a debtor, having, in fact, ample means and only technically insolvent, and his commercial paper maturing at such intervals of time, and in such amounts as would, with some forbearance on the part of creditors, afford a reasonable expectation and belief that he can continue in business and pay all his debts, might make some payment of indebtedness without being properly chargeable with an intent to give a preference in fraud of the bankrupt act. But where such debtor, knowing that he is, in fact, insolvent, and that his present means are insufficient, by present conversion into money, to pay all his liabilities, and all, or nearly all, of the same having either matured or being on the eve of maturity, the payment in whole or in part of one creditor, either in money or in property, affords very cogent evidence of an intent on the part of such debtor to make an unlawful preference. Hence, in view of the evidence of the case, I feel constrained to find that said bankrupts, in assigning said notes to Deere & Co., acted with a view to give them a preference.

The remaining question is, whether Deere & Co. procured the notes in question, having reasonable cause to believe that the said bankrupts were insolvent, and knowing such procurement of the same was in fraud of the provisions of the bankrupt act? On June 22, 1874 [18 Stat. 180], section 35 of said act was amended by inserting the word "knowing"—thereby providing that the person receiving the benefit of the payment, assignment, or conveyance, must not only have reasonable cause to believe the bankrupt insolvent, but have knowledge that the same was in fraud of the provisions of said act. Under this amendment it is obvious the person receiving the alleged preference must be shown to have knowledge that the payment,

assignment, or conveyance was in fraud of said act. But what particular weight of evidence, in any particular case, shall be deemed sufficient to establish the existence of such knowledge must be determined by the court or jury before which the same is tried. There appears to be some conflict of decisions as to what state of facts will constitute a legal presumption of such knowledge. It has been held by some of the courts, that where such a state of facts is shown as would lead a person of ordinary caution and prudence to believe the bankrupt insolvent, then the persons receiving the alleged preference must be presumed to have received the same with knowledge of the fraud upon the act. That such person must be presumed to know what he has reasonable cause to believe. See Hamlin v. Pettibone [Case No. 5,995; Brooke v. McCraken [Id. 1,932]; Webb v. Sachs [Id. 17,325].

It is true that it is a general rule that a party who has sufficient notice to put him on inquiry is chargeable with knowledge of all facts which, by proper inquiry, he might have ascertained. While this is a well settled doctrine in the general administration of the law, yet it is obvious that said section 35, as amended, requires something more to be shown than simply constructive notice or knowledge. Constructive knowledge is that which is inferred as a matter of legal presumption, from notice of such a state of facts as should have put the person, sought to be charged, on inquiry. But there is a well defined distinction between such constructive knowledge and actual knowledge. It is manifest that a person may have constructive knowledge of a fact, and yet not have actual knowledge of the same. Taking into consideration the adjudications under said section 35, prior to said amendment, and the circumstances attending such amendment, I believe it to be more consonant with proper judicial construction to hold that said section, as amended, requires actual knowledge, as contradistinguished from constructive knowledge, to be shown. There can be no doubt, however, that actual knowledge may, under some certain circumstances, be properly a matter of legal presumption. As, for instance, when the person receiving the alleged preference is shown to have actual notice of a state of facts, in relation to the financial affairs of the bankrupt, constituting, in law, a state of insolvency. Under such circumstances, actual knowledge would, ordinarily and properly, be inferred as a matter of legal presumption. This legal presumption rests upon the principle that every person must be held to intend the necessary and natural results of his own acts, as viewed under the law. Toof v. Martin, 13 Wall. [80 U. S.] 40; Webb v. Sachs [supra]; In re Herpich [Case No. 6,418]. Every one is presumed to know the law, and when a person enters into a transaction, the natural and

11 FED. CAS.—53

necessary result of which is an infraction of the law, it becomes properly a matter of legal presumption that such person had actual knowledge of such unlawful result of his own act.

Having thus considered some of the more material questions of law, I come now to the consideration of the evidence. It appears from the testimony of Lucian Wells and Charles Deere, they being the authorized representatives of Deere & Co., that, about the 12th day of December, 1876, they had an interview with A. S. Hauck, one of the bankrupts, wherein he gave to them a list containing the names of all the creditors of A. S. Hauck & Co., with the amount owing each creditor. This list, if true, must have shown to Deere & Co. that the indebtedness of said bankrupts amounted to about the aggregate sum of sixteen thousand dollars, above fourteen thousand of which was either due, or would become due on January 1st, 1877 (or within twenty days after said interview), and that the remaining portion of said indebtedness would become due within the period of thirty days thereafter. It does not positively appear that the date of the maturity of each debt was stated in said list; but if not, under all the circumstances of said interview, I think it is fair to find that the several dates of the maturity of the debts contained in said list were substantially made known by Hauck to them—at least that the whole of their indebtedness was on the eve of maturity. It also appears, from the testimony of said witnesses, that said Hauck stated at said interview that his firm had been unable to realize on a great deal of their "farmers' paper," and for that reason they were not going to be able to pay all their paper which would mature the following month; that he had to request Deere & Co., as also all their other creditors, for an extension of time; that their means were ample to pay all indebtedness; but that they must have some further time to collect their notes and accounts; that Charles H. Deere stated in reply, that Deere & Co. were willing to make the same extension as the other creditors. Also Hauck testified that he stated at said interview, that they could not pay their debts as they fell due, and that it was necessary to have the benefit of another year's trade in order to enable them to pay their debts.

It is manifest that these facts, thus stated by Hauck, constitute in law at least a state of commercial insolvency, or insolvency such as that term denotes when applied to a merchant or trader. They were also, as above shown, in fact insolvent within the general and popular meaning of that term. They were, as merchants and traders, commercially insolvent by reason of their inability to pay their debts as they would mature in the ordinary course of business, irrespective of ampleness of means to pay all their debts in case prop-

er extension of time should be obtained. Nor can it be doubted from the facts, testified to by the witness Metzger, agent and representative of said Deere & Co., of the telegram and letter being sent by said Deere & Co. to said Metzger immediately after said interview, and the other transactions which occurred between Metzger and said bankrupt, after receiving said telegram and letter, that Deere & Co. felt no inconsiderable anxiety to protect themselves, as far as possible, amidst these threatening financial embarrassments of the bankrupts. Although the said representatives of Deere & Co. may have believed, from the representations made to them by said bankrupts, that they possessed ample means to pay all their debts in the event of their obtaining the extensions of time they asked for—and stated they must have—yet, they having had actual notice of a state of facts in relation to the financial conditions of the bankrupts, which in law constituted a state of insolvency within the meaning of that term, as applicable to them as merchants and traders; and they at the same time, in fact, being insolvent within the general and popular meaning of that term, it is manifest that it must be deemed a matter of legal presumption, from such a state of facts, that the said representatives of Deere & Co. had actual knowledge that the procuring of the notes in question was a fraud upon the provisions of the bankrupt act—as it must be so deemed in fact. To hold thus, I believe to be in harmony with the views of the supreme court, as stated in Toof v. Martin, above cited. If a debtor is, in fact, insolvent—and a creditor, receiving the alleged preference, has actual notice of a state of facts constituting in law such insolvency—then there arises a presumption of actual knowledge on the part of such creditor, of the unlawful result of his act, and such presumption must be held as conclusive until rebutted by proper proof on the part of the creditor. This rule must apply to both kinds of insolvency as above defined. But it is undoubtedly true that, in cases of commercial insolvency, such presumption of knowledge might be rebutted frequently by comparatively slight evidence. Where the debtor, however, as in the present case, at the time of the alleged preference is in fact insolvent by reason of the excess of indebtedness over and above the value of assets, although having actual notice only of such a state of facts as constituted in law commercial insolvency—yet the presumption of actual knowledge of the fraud becomes very cogent and decisive, requiring clear and satisfactory evidence to overcome the same.

Under all the circumstances of the case, I feel compelled to find that Deere & Co. received the notes in question in violation of the bankrupt act. as provided in section 35 thereof; and an order of court must issue, directing them to either deliver the same to the assignee herein, or pay the value thereof in money—in which event, the amount of the value thereof is fixed at four hundred and ninety-seven dollars and twenty-nine cents. And the allowance of proof of claim must be upon the condition of compliance with such order.

LOVE, District Judge. The foregoing cause having been submitted to said court on the 19th day of July, 1877, at Keokuk, and the court having heard counsel, and examined said cause and the opinion of the register, doth adjudge that the judgment of said register be confirmed and ratified. It is further ordered that the register proceed accordingly.

DILLON, Circuit Judge. The foregoing named petition for review of the said order, having been argued and submitted to me by the counsel for Deere & Co., and by the counsel for the assignee, and the same having been duly considered, it is ordered that the said order and decision of the said district judge be and the same is hereby affirmed in all respects, and the register is ordered to proceed accordingly.