HARRIS and another *v.* HANOVER NAT. BANK.

*(Circuit Court, S. D. New York. 1883.)*

1. BILLS AND NOTES OF INSOLVENTS—MUTUAL MISTAKE—ATTACHMENT.

When bills of an insolvent bank, or the notes of a party who has previously failed, are transferred in payment of a debt or sold as solvent paper, both parties being ignorant of the failure and innocent of fraud, the creditor or buyer may repudiate the payment or sale, upon a tender or return of the dishonored note, and recover the amount due.

2. SAME—CASE STATED.

The plaintiffs were the owners of a promissory note made by a firm in New Orleans. The note was sold by note brokers of New York to the defendant. On the same day, an hour before the sale of the note, an attachment, upon which their establishment was seized, was issued against the makers of the note by local creditors. The money received by the note brokers for the note being paid into court, the question remained whether the plaintiffs or the defendant, both parties being ignorant of the attachment and acting in good faith, should bear the loss. *Held*, that the defendant might rescind the contract for the purchase of the note and recover back what it paid therefor, on the same principle that the plaintiffs would have been allowed to rescind had the note been paid for the day following in bills of an insolvent bank.

3. SAME—INSOLVENCY.

When a firm is unable to meet its obligations and allows its property to be taken under an attachment on the charge of fraud, which it does not deny, it is legally if not actually insolvent.

*James S. Stearns,* for plaintiffs.

*Thomas S. Moore,* for defendant.

COXE, J. Prior to November 29, 1881, the plaintiffs were the owners of a promissory note for $1,508.28, made by Levi & Co., of New Orleans. On that day, and after 11 o'clock A. M., the note was sold by Hess Brothers, note brokers of New York, to the defendant. On the same day, and at about half past 10, New York time, an attachment was issued against Levi & Co., in a suit commenced by local creditors, upon a demand for $5,035,—$2,500 becoming due November 26, and the balance December 13, 1881. The establishment of Levi & Co. was seized and closed by the sheriff. The firm, however, considered themselves in business, and did, in fact, continue to draw checks and collect bills—outside of the store—until December 2d, when their first note went to protest. Hess Bros. having paid the money into court, the question to be determined is whether the plaintiffs or the defendant—all parties being ignorant of the attachment and acting in good faith—should bear the loss. A somewhat careful examination has failed to discover an adjudica-

tion clearly and unequivocally sustaining the position contended for by the plaintiffs, the facts being similar to those developed here.

The almost unbroken line of authority seems to establish the doctrine that if bills of a broken bank, or the notes of a party who has previously failed, are transferred in payment of a debt, both parties being ignorant of the failure and innocent of fraud, the creditor may repudiate the payment, upon a tender or return of the dishonored note, and recover the amount due. It is a mutual mistake of fact. *Lightbody* v. *Ontario Bank*, 11 Wend. 9; *Ontario Bank* v. *Lightbody*, 13 Wend. 101; *Young* v. *Adams*, 6 Mass. 182; *Thomas* v. *Todd*, 6 Hill, 340; *Harley* v. *Thornton*, 2 Hill, (S. C.) 509; *Fogg* v. *Sawyer*, 9 N. H. 365; *Westfall* v. *Braley*, 10 Ohio St. 188; *Roberts* v. *Fisher*, 43 N. Y. 159; *Baldwin* v. *Van Deusen*, 37 N. Y. 487; *Houghton* v. *Adams*, 18 Barb. 545; *Townsends* v. *Bank of Racine*, 7 Wis. 185; *Leger* v. *Bonnaffe*, 2 Barb. 475; *Stewart* v. *Orvis*, 47 How. Pr. 518. It is true that in many of these cases the debased or worthless paper was given in payment of a preexisting debt, while in the case at bar the delivery was the result of a bargain and sale.

In the former circumstances, an obligation existed to pay the debt in money—in coin; in the latter, the vendor was simply required to transfer the note—the note of a live and not of a defunct copartnership. In this respect the cases differ, and this element of strength is wanting in the defendant's argument. And yet, upon an analysis of the reason upon which these decisions are based—viz., mutual mistake—it is not easy to discover any difference in principle. The plaintiffs supposed that they were selling solvent paper; the defendant supposed that it was purchasing such paper, and payment was made on this supposition. Both parties were mistaken. While the note was yet in the possession of the plaintiffs, and owned by them, it became worthless, or greatly impaired in value. Both parties being honestly in error, why, upon principle, should not the defendant have the same right to rescind that the plaintiffs would have, had the note been paid for the day following, in the bills of an insolvent bank? But in some of the authorities cited—the last three, for instance— the distinction referred to does not exist, and the facts closely approximate those existing here.

The plaintiffs contend further that the levying of the attachment did not, in contemplation of the law, amount to a failure on the part of the makers of the note, neither was it evidence of insolvency. It is thought that this position is not tenable. The attachment was granted in a suit *ex contractu*, upon a debt then due, on the ground

that Levi & Co. were disposing of their property with intent to defraud their creditors. The sheriff took possession of their establishment, seized their entire stock, and turned them into the street. Four days afterwards their notes went to protest, and there is no evidence that they resumed business thereafter. If the firm was not legally extinct, it certainly was stricken with a commercial paralysis. It was unable to meet its obligations as they fell due; it suffered its property to be taken on a charge of fraud which was not denied; it was legally if not actually insolvent. *Webb* v. *Sachs*, 15 N. B. R. 168; *In re Hauck*, 17 N. B. R. 158; *Harrison* v. *McLaren*, 10 N. B. R. 244; *In re Ryan*, 2 Sawy. 411.

The case of *Otis* v. *Cullom*, 92 U. S. 447, relied on by the plaintiffs, can hardly be regarded as controlling. There was in that case no mistake of fact. If a mistake existed it was one of law. After the purchase of the bonds the courts decided that the law did not authorize their issue. There was no guaranty, express or implied, that the law was constitutional. The plaintiff knew the facts and chose to take the risk of the bonds being subsequently declared invalid. In precisely the same manner the defendant here took the risk of all subsequent infirmities.

The questions in this action are by no means free from perplexities and doubt. The weight of authority, however, seems to sustain the positions taken by the defendant.

It follows that judgment should be entered awarding the money in court to the defendant.