THE ROCKLAND & ROCKPORT LIME CO. NO. 1.

(District Court, E. D. New York. January 5, 1910.)

1. SALVAGE (§ 26*)—ELEMENTS IN DETERMINING AMOUNT OF COMPENSATION—INJURIES TO VESSEL.

In an award for a salvage service, damages to the rescuing vessel cannot be included as specific items, in addition to the award for the service, but may be taken into consideration in fixing such award.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. § 63; Dec. Dig. § 26.*]

2. SALVAGE (§ 27*)—AMOUNT OF COMPENSATION—RESCUE OF BARGE IMPRISONED IN ICE.

A tug *held* entitled to an award of $1,200, one-third to the officers and crew, for services rendered in the rescue of a barge from a point in lower New York Harbor, where she had been carried from her slip in Brooklyn by an ice floe in which she was frozen; the barge and cargo being of the value of about $40,000.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 65, 66; Dec. Dig. § 27.*

Awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit by the McCaldin Bros. Company and another against the barge Rockland & Rockport Lime Co. No. 1. Decree for libelants.

Robinson & Robinson (George L. Robinson, of counsel), for libelants.

Wing, Putnam & Burlingham (James Forrester, of counsel), for claimant.

CHATFIELD, District Judge. The barge in question, worth $35,000, with a cargo of coal valued at $5,500, upon the 8th day of February, 1908, was imprisoned in the ice at a slip in Brooklyn, and during the night of the following day was carried by the ice floes

slowly down through the Narrows. The barge had two anchors, which would have held her under ordinary conditions, upon a considerable length of chain, and when the ice floes reached the deep water of the Narrows, her drift, with the ebb tide, became much more rapid, so that upon Monday morning, February 10th, between approximately 7 and 10 a. m., she covered the distance from the Narrows to a point located as 500 or 600 feet from the northwestern edge of the sand bank surrounding the Romer Shoal. The ebb tide had some little time, an hour or so, more to run. The captain of the barge, a foreigner, and who was not a navigator, had the impression, and so testifies, that the barge was within the shallow and protected space of Gravesend Bay. But it is apparent that he was actually out in the lower harbor, and exceedingly close to a situation where his vessel would probably have gone ashore with likelihood of being wrecked. It is stated by the witnesses that the conditions in the harbor were the worst they had seen in many years, so far as floes of ice were concerned, upon the morning in question, but that during the morning the weather was bright and the day clear.

The libelants are the owners and crew of a tug, the McCaldin Brothers, which upon the morning in question started down the harbor, and, when off Tompkinsville, jammed into the ice, in order to release some vessels which were imprisoned at that point, but being unable to reach them, and becoming itself firmly imbedded or frozen in the ice, was enabled to escape only by the passage of the Taylor, a large and powerful tug, which intentionally followed a path close to the McCaldin Brothers, and, thus breaking the ice, gave her a chance to work out from the floe. The McCaldin Brothers then proceeded down the bay and found barge No. 1, drifting bow first, at a point to the south and east of Ft. Hamilton. It appears that prior to this another tug, the Mutual, had had some communication with the captain of barge No. 1, and had offered to break the ice for $500; but this offer was refused, and the Mutual went away.

The McCaldin Brothers, after some communication and intimation on the part of the captain of the barge of a willingness to be helped, commenced a series of attacks upon the ice surrounding the barge, and succeeded in the course of 1¾ hours in reaching her side, breaking the floes away, and getting her under control, so that she was enabled to lie still by the strength of her own anchors. She lay there until the next day, when she was towed back up the harbor, and no damage resulted to the barge. The tug McCaldin Brothers at some time broke one of the blades of her propeller and did some damage to her side and rail, and the captain of the McCaldin Brothers testified that these injuries did not happen until after the McCaldin Brothers had attempted to break into the ice and rescue barge No. 1.

Such services cannot be considered salvage, in the sense of meaning the rescue or saving of a deserted, wrecked, or derelict craft. The early cases, based upon pure salvage services, gave large awards. The Lamington, 86 Fed. 675, 30 C. C. A. 271, and cases therein collated. After the development of the shipping business in the harbor of New York, and the increase of dangerous situations, where promptness, ability, and indifference to danger resulted in saving from consider-

able loss, even if the vessel so served was neither wrecked nor abandoned, many cases have granted awards in the nature of salvage at a rate much in excess of mere compensation for the time and energy expended, if estimated at the regular rate of hiring. The J. F. Farlan, Fed. Cas. Nos. 7,313 and 7,314; The Stratton Audley, Fed. Cas. No. 13,529; Sturgis v. The Vickery, Fed. Cas. No. 13,577a; and The Birdie, Fed. Cas. No. 1,432. The case of Crary v. The Eldorado, Fed. Cas. No. 3,362, is almost identically like the present so far as the first question of allowing compensation is concerned. But the present situation is complicated, in that the tug suffered injuries in performing the work. If she had escaped unharmed, an allowance of a reasonably small amount would be a proper reward and award for what she did, for the time she was occupied, and for the risk involved.

Some danger existed, as does always in the case of ice floes, and in the case at bar the pressure of the floes caused water to come over the sides of the vessel, and she undoubtedly underwent some risk. But it has been held that risk is a part of the speculation in which a salvor engages when he attempts to save property. The elements of danger and of heroism are to be taken into account, and are to be rewarded if successful. If the present case were one of salvage for saving a wrecked vessel, the award of itself would be large enough to take into account the cost of the injuries to the tug; but those injuries would not be treated as specific items of damage. In cases where the services are rewarded as if salvage, and where the element of danger to the rescuer consists in a likelihood that he will sustain certain injuries which will necessitate repairs, it would seem (as well as when he undertakes a salvage service) that he assumes the risk of the service being successful, and even to the extent of earning a reward sufficiently large to include any incidental repairs on his part.

It has been recently held in this court (McCaldin Bros. Co. v. Steamship Ciudad De Reus, 176 Fed. 802) that injuries received by a tug, in the nature of the giving out of a condenser through the mere effort of trying to hold a vessel against the wind, was a result which might have happened under ordinary conditions of service, and was a risk of which the rescuing tug took the chance. It would seem that, as a matter of principle, it is impossible to include damages as a specific item to be charged against the vessel saved, in addition to or as a component part of the salvage award. The Carl Schurz, Fed. Cas. No. 2,414; Hattrick v. Spanish Bark, 11 Fed. Cas. 831; The L. W. Perry, 71 Fed. 745. On the other hand, in making an award in such a case as the present, the likelihood of receiving damage, and the circumstances causing the damage, as well as the extent of that damage, should be taken into account in determining what award should be allowed, for the situation of the rescued vessel can in a way be estimated from the difficulties and the natural results of her rescue.

In addition, the division of the award in the proportion of two-thirds to the tug and one-third to the crew, which is frequently allowed (but which in harbor cases, where the rescuing vessel is not endangered, has been sometimes changed to one-half to the vessel and one-half to the crew) must be considered in dealing with these items of damage to the vessel.

Under the circumstances, it is thought that the situation on the morning in question and the services rendered would properly be met by a salvage award of $1,200, of which two-thirds may go to the vessel and one-third to the crew.