## Case No. 4,302.

### In re EELES.

[5 Law Rep. 273; 1 N. Y. Leg. Obs. 84.]

District Court, N. D. New York. Aug., 1842.

Mr. Myers, for the petitioning creditor.
Bennett & Goodwin, for respondent.

CONKLING, District Judge. The question upon which this case turns is of great importance; because its decision must necessarily embrace many other descriptions of persons besides distillers. I cannot say that I have at any time entertained any serious doubt upon it, but I have nevertheless listened patiently to the argument of the respondent's counsel, and have endeavored to allow to it its just weight. The terms of the act applicable to this question are these: "all persons being merchants, or using the trade of merchandise, all retailers of merchandise," etc. The counsel for the respondent insists that these words are to be construed according to their ordinary popular signification in this country; and that as distillers are never, in common parlance, denominated merchants, they are not within the act. But I am of opinion that such a construction of the act would not be in accordance either with its obvious spirit, or a just interpretation of its language. Those provisions of the act upon which this question depends, look chiefly to the security of the creditor against the fraudulent acts of the debtor, whether directed against all his cred'tors, or designed to favor one or more of them at the expense of the rest. To this end they confer upon the creditors of a debtor who by certain specified acts evinces a fraudulent purpose, the power of compelling him to give up all his effects for just distribution to their use. This remedy is given by the act against "all persons being merchants, or using the trade of merchandise, all retailers of merchandise, and all bankers, factors, brokers, underwriters, or marine insurers, owing debts to the amount of not less than two thousand dollars." Now if we look for the common feature which distinguishes the occupation of each of these several descriptions of persons from those other classes, who under no reasonable construction of the act can be subjected to it, such as professional men, farmers, artificers, and laborers, we shall find it to be this; that their business is carried on to a greater or less extent by credit gained on an uncertain capital stock. And the enumeration is so comprehensive, as to warrant the conclusion, that this was the controlling circumstance with the legislature in making the selection. But if the narrow construction of the words of the act on which this question depends, which is insisted on by the respondent's counsel, is to prevail, it will follow that several numerous classes of persons besides distillers, whose occupations are equally characterized by the same distinctive feature. such as all those usually denominated manufacturers, brewers, cattle and horse dealers, millers, tanners, bakers, butchers, etc. are excluded. This would be an inconsistency for which it would not be easy to account, and furnishes a reason for giving to the words in question a more comprehensive construction, if they will reasonably admit of it.

It was argued by one of the counsel for the respondent, that the compulsory provisions of the act were in their nature penal, and ought therefore to be construed strictly in favor of the debtor. I think this is a mistake. The act is remedial, and is to be so

construed as to suppress the mischief and advance the remedy. Such was the view of Lord Mansfield in the case of Worseley v. DeMattos, 1 Burrows, 474, where he says the bankrupt laws "are to be construed favorably for creditors, and to suppress fraud." But the true answer to the argument on the part of the respondent is, that the phrases of the act in question were unquestionably intended by congress to be used in the same comprehensive sense which in the English courts has long been ascribed to the correspondent phrases in the English bankrupt acts. The frequent occurrence of the word trader in the English books of reports and elementary works treating of bankruptcy, has naturally led to the impression that this is the term used in the early English acts to designate one of the denominations of persons who may be made bankrupts. But this is an error. The first English bankrupt act was 34 Hen. VIII. c. 4, which embraced "persons craftily obtaining into their hands great substance of other men's goods." The succeeding statutes of 13 Eliz. c. 7; of 1 Jac. I. c. 15; and of 21 Jac. I. c. 19, contain words substantially the same as those of the American act, now in question; and the last embraces also persons that use the trade or profession of a scrivener, receiving other men's moneys or estates into their trust or custody. The language of these acts is nearly identical. That of the last, on which nearly all the decisions affecting the present question have been founded, is as follows: "every person that uses the trade of merchandise, by way of bargaining, exchange, bartering, chevisance or otherwise, in gross or by retail, or seeking his or her living by buying or selling—shall be liable to be a bankrupt." By 5 Geo. II. c. 30, bankers, brokers and factors were also rendered subject to be made bankrupts. And lastly, by 6 Geo. IV. c. 16, § 2, it is enacted that all bankers, brokers, and persons using the trade or profession of a scrivener, receiving other men's moneys or estates into their trust or custody, and persons insuring ships, or their freight, or other matters, against perils of the seas, warehousemen, wharfingers, packers, builders, carpenters, shipwrights, victuallers, keepers of inns, taverns, hotels or coffee-houses, dyers, printers, bleachers, fullers, calenderers, cattle or sheep salesmen, and all persons using the trade of merchandise by way of bargaining, exchange, bartering, commission, consignment or otherwise, in gross or by retail, and all persons who, either for themselves, or as agents or factors for others, seek their living by buying and selling, or by buying and letting for hire, or by the workmanship of goods or commodities, shall be deemed traders liable to become bankrupt; provided that no farmer, glazier, common laborer or workman for hire, receiver general of the taxes, or mem ber of, or subscriber to any incorporated commercial or trading companies established by charter or act of parliament, shall be deemed as such trader liable by virtue of this act to become bankrupt. I cite this last act chiefly for the purpose of indicating in the most summary manner the denominations of persons who have been adjudged by the English courts to be liable to be made bankrupts under the former act; for with very few exceptions, and, if I am not mistaken, with the single exception of keepers of houses of entertainment, all the classes enumerated in this last act as being liable to become bankrupt, had already, directly or by necessary implication, been adjudged to be so liable under the prior acts. And even inn-keepers, who sold liquor to be drunk out of their houses, had been held to be within the scope of these acts. Patman v. Vaughan, 1 Term R. 572. This act may therefore be regarded as essentially declaratory of the previous law as settled by a long series of decisions founded on the antecedent statutes. It is true, that in addition to the terms used in the American act, these acts contained the phrase "of seeking his or her living by buying or selling." Satisfactorily to determine what precise extent, if any, the decisions of the courts were influenced by these words, would require a more extended and minute examination of adjudged cases than I have at present the time and means to make. But from the attention I have been able to bestow to the subject, I am led to conclude that their influence has been slight. The term "trader" was early adopted by the courts, and has ever since been used, as descriptive of the sorts of persons intended by the legislature to be embraced by all the phrases used in the early acts taken collectively; and this term seems rather to have been suggested by the phrase "using the trade of merchandise," (contained also in the American act), than by the phrase "seeking his or her living by buying and selling," omitted in the American act. Whether by this omission it was the intention of congress to restrict the scope of our act to limits less extended than those which had been assigned to the early English acts; and if so to what extent; are questions which sooner or later it will probably be necessary for the courts to decide, but which I do not consider to be necessarily involved in the present case: because any construction of the act which would exclude this respondent, would render it so defective, so inconsistent with itself, and so unjust to creditors, as in my judgment to be wholly inadmissible. A rule to permit petitioning creditors to examine witnesses for the purpose of substantiating such of the charges contained in their petition as are denied or controverted by the respondent's answer, must therefore be granted.