## JOHN C. VENNARD *vs.* GEORGE McCONNELL & another.

Upon the issue whether a debtor who asked an extension from his creditors at a particular time was then insolvent and had reasonable cause to believe himself so, evidence is incompetent to show that persons engaged in the same line of business at that time generally obtained an extension; that it was the general understanding among the trade that asking for an extension at that time was no sign of inability to pay debts; and that all persons in that line of business either temporarily suspended payment or asked for an extension at that time.

The rule of law by which the question is determined whether a debtor was solvent or insolvent at a particular time is not affected or modified by any general embarrassment of the operations of trade, arising from the existence of a civil war, or by the fact that all persons in the same line of business were unable to pay their debts at maturity.

If various issues have been submitted to a jury, on an appeal from the decision of a judge of insolvency refusing to grant a certificate of discharge to an insolvent debtor, and, upon one of them which was submitted under instructions to which no exceptions were taken, they have found a fact which will deprive the debtor of his discharge, a new trial will not be granted even if the instructions were erroneous concerning other issues, upon which they also found adversely to the debtor.

If various issues have been submitted to a jury, who after agreeing upon some of them and failing to agree upon others have improperly separated without leave of the court, their findings upon those issues in regard to which they agreed will not be set aside, if it appears to the court that their failure to reach a verdict on the others did not resu t from inabil ty to agree on any element common to all the issues.

APPEAL from a decree of the judge of insolvency, refusing to grant a certificate of discharge to an insolvent debtor. Thirty nine issues were framed and submitted to the jury. The first and second were afterwards waived; the next thirty-six each charged that Vennard, the appellant, within one year previous to the filing of his petition in insolvency paid or secured in whole or in part a preëxisting debt or liability to a person therein named, he the said appellant being then insolvent and having reasonable and sufficient cause to believe himself insolvent; and the last one charged that the appellant, being a merchant or tradesman, did not subsequently to July 6th 1856 keep proper books of account.

At the trial in the superior court, before *Putnam*, J., George McConnell, one of the assignees, was called as a witness by the appellees, and testified that he was in the leather business in 1861, as a member of the firm of George G. Gove & Co. On cross-examination he stated that that firm failed in 1861, and the following questions were then propounded to him by the appellant, for the purpose of showing the condition of business in the summer and spring of 1861, and the course and usages of trade in this particular branch of business at that time, and thus of showing that Vennard (who was also in that business and was shown to have asked an extension at that time) was not insolvent and had no reasonable and sufficient reason to believe himself so :

" Did not persons engaged in the shoe trade in the spring and summer of 1861 generally if not invariably obtain an extension ?

" Was it not the usual course of business in the shoe trade, at that time of that year, to ask for and obtain an extension ?

" Was it not the general understanding among the trade that asking for an extension at that period by people who had southern paper on hand was no sign of inability to pay their debts in full ?

" Did not all persons within your knowledge, connected with the southern shoe trade, either temporarily suspend or ask for an extension, in the spring and summer of 1861, without exception ? "

These questions were severally objected to and ruled to be incompetent. It had previously appeared in the case that the appellant's sales were exclusively in New Orleans.

The appellant testified that he commenced his shoe business about the year 1853, and that in the early part of the spring of 1861 he applied to all of his creditors for an extension, stating his belief that if he was allowed to go on with his business he could pay them in full; and that they all agreed to extend his paper, and allow him to go on with his business as before. This evidence was controverted, as to certain of the creditors.

The appellant asked for the following instructions to the jury:

"That in determining the question whether Vennard was actually insolvent and had reasonable and sufficient cause to believe himself so, at the time of making any of the payments alleged to be preferences, the jury are to consider all the circumstances of the case, the condition of the country and the habits and usages of the place where he did his business, and of the particular branch of business in which he was engaged; and particularly the agreements of the parties to whom he was indebted. And if the jury find that as matter of fact all the creditors to whom he was indebted, before the maturity of their notes, agreed that they would wait upon him, and consented that he should go on with his business and manufacture his goods substantially as he did go on with his business and manufacture his goods, this fact is most material in determining the question whether he was insolvent within the meaning of the law. In considering the question of what the insolvent owed, and in determining whether he was able in the spring and summer of 1861 to meet his obligations and pay his debts as they became due in the ordinary course of business, as men in similar business usually do, the jury are to consider not only the written contracts of the parties but also any agreement which they find to be proved in regard to an extension of the time of payment. And if they do not find that he was not able, or had no reasonable or sufficient cause to believe himself able, to pay his debts as they became due, under all the agreements of the parties,

including such extensions, then it is not sufficient upon this part of the case."

The judge refused to give these instructions, but instead thereof instructed the jury as follows:

" That a debtor might be said to be insolvent within the meaning of the act when he was not in a condition to pay his debts in the ordinary course of his business; that this rule might be modified by the habits and usages of the place where the debtor resided and of the particular branch of business in which he was engaged; that the agreement of his creditors to give him an extension did not bear upon the question of his insolvency, if he was thus unable to pay his debts, but that their agreements might have a bearing upon the question whether his payments were preferences; that if the jury found that as matter of fact all his creditors before the maturity of their notes, upon his representation to them that he could not pay them at maturity, agreed that he might go on substantially as he did go on, and particularly might pay the creditors whom it was claimed that he did pay, they would be estopped from claiming in these proceedings that the payments which he made were preferences which would prevent his discharge; that for this purpose and as bearing on this point in the case the agreements of the parties in reference to such extension were proper for them to consider;" and the judge left it for the jury to say whether there was any such agreement or understanding.

The jury were instructed, with the consent of parties, to seal up their verdict when they agreed, and return it into court in the morning. They retired shortly before the afternoon adjournment, and the officer in charge was instructed to keep them together until seven o'clock in the morning, unless they should agree at an earlier hour. At four o'clock in the morning they informed him they had agreed, and separated, having sealed their verdict.

Upon coming into court in the morning, the verdict was opened by the clerk, and it appeared that they had failed to agree upon a verdict upon certain of the issues, and had found some of the other issues for one of the parties and some for the

other.     The verdict upon the last issue was against the appellant.

The appellant thereupon objected to the affirmance of the verdicts, but the judge allowed them to be affirmed, so far as the jury had agreed.     Subsequently, on the same day on which the verdict was rendered, and without the consent of the appellant, the appellees filed a waiver of the issues upon which the jury disagreed.

The appellant alleged exceptions.

*J. W. Perry & S. B. Ives, Jr.,* for the appellant.     The several questions put to McConnell were competent.     See *Lee* v. *Kilburn,* 3 Gray, 594.     The court erred in refusing the instructions prayed for, and in giving those reported in the bill of exceptions.     Even if the instructions prayed for were too broad, those given did not afford an intelligible rule to the jury.     In a case where, from violent disturbances in the country, which it is hoped will be temporary, a whole branch of business is disarranged, and where all traders engaged in that business attempt to bridge over the difficulties until order is restored and communications reopened, so that remittances can be received from the disturbed districts of the country, and where all the traders engaged in that branch of business suspend payment and procure extensions of their credit, and at the same time insist that an individual shall not surrender his property under the insolvent laws, but shall go on with his business as usual, and thus labor to preserve the public faith and the public confidence, and an individual does go on in accordance with the general course of business of the time and place, and in accordance with the desire of all his creditors, and makes payment which within the strict rule of *Thompson* v. *Thompson,* 4 Cush. 127, would be preferences, we say the rule of law, under such circumstances, was not properly stated to the jury.

The jury were bound to pass upon all the issues submitted to them.     *Holmes* v. *Wood,* 6 Mass. 2.     But upon finding certain issues they might be discharged by the court without passing upon the rest.     *French* v. *Hanchett,* 12 Pick. 15.     *Sutton* v *Dana,* 1 Met. 383     In this case the jury discharged themselves,

and separated contrary to the order of the court. The issues were all so connected together that the jury, if compelled to find the undetermined issues, might have revised their whole verdict.

In reference to the last issue, the appellant is confident that the superior court would grant him a discharge, upon an inspection of his books, notwithstanding the verdict. The finding upon this issue, therefore, does not render the others immaterial.

*J. D. Ball*, for the appellees.

BIGELOW, C. J. We are of opinion that none of these exceptions can be sustained.

1. The questions put to McConnell, one of the assignees, were clearly incompetent. Passing by all other objections, a sufficient and decisive reason for refusing to allow them to be put is, that if answered in the affirmative they could have elicited no fact which had any tendency to support the issue on the part of the appellant. Viewed in the most favorable aspect for him, the answers would only have shown that other persons engaged in the same business as that carried on by him were, at or about the time inquired about, unable to pay their debts in the usual course of business, and were compelled to ask of their creditors an extension of the credit originally granted them. In other words, the appellant sought to prove that there was a general insolvency among a certain class of persons in the spring and summer of 1861. It is too obvious to admit of discussion that evidence that others employed in similar pursuits were in an insolvent condition had no tendency to prove that the appellant was not insolvent, or that he had not reasonable and sufficient ground to believe himself insolvent.

It is urged that proof of the habits and usages of the trade in which the appellant was engaged and of the usual course of business for the year were admissible, for the purpose of explaining the pecuniary condition of the appellant and rebutting the allegation of unlawful preferences of certain of his creditors  It is doubtless true that in many cases the abstract

rule defining the insolvency of a trader may be modified by the habits and modes of dealing in the town or city where a debtor resides, and of the particular branch of business in which he may be engaged. But this proposition does not extend far enough to embrace the case which the appellant attempted to prove. His offer was not to show that an established usage of business prevailed in carrying on the trade in which he was engaged, but only that during a particular season in the year 1861 large numbers of persons employed in the same kind of business were unable to pay their debts as they fell due. This was in effect nothing more than an attempt to show a general condition of insolvency among a certain class of persons at the time designated. Clearly evidence of such a nature had no bearing, direct or remote, on the subject matter of inquiry before the jury.

2. The instructions asked for were rightly refused, and those which were given were correct and well adapted to the issues which the jury were to determine. If they are open to any criticism, it is that they were too favorable for the appellant. Evidence to prove the general disturbance of business created by the civil war in the spring and summer of 1861, and the consequent inability of those engaged in certain branches of trade to pay their debts as they matured in the regular course of business, as conducted in seasons of public tranquillity and commercial prosperity, had no relevancy to the questions upon which the jury were to pass. The rule of law by which a condition of solvency or insolvency is to be ascertained and determined could not be affected or modified by any sudden, temporary or general embarrassment of the operations of trade, causing widespread monetary distress and mercantile disaster, whatever may have been the causes which led to such results. Nor can it be doubted that the appellant was insolvent in the legal sense of that word, if he was unable to pay his debts as they fell due according to the usage of the trade in which he was engaged, and of the place in which he carried on his business, in ordinary times and under ordinary circumstances, notwithstanding many others employed in simi-

occupations may also have been in a like condition of insolvency. The proposition cannot be maintained, consistently with the established rules of law, that a debtor ceases to be insolvent because, being unable to pay his debts in the regular course of business, his creditors have entered into an agreement to extend the time of payment of their debts; or that the payment of a debt by a party who is insolvent cannot be regarded as a preference if made with the hope and expectation by the debtor that he will be able eventually to pay all his debts in full. The adjudicated cases leave no room for doubt on these points, *Thompson* v. *Thompson*, 4 Cush. 127. *Lee* v. *Kilburn*, 3 Gray, 594. *Holbrook* v. *Jackson*, 7 Cush. 136, 149. *Barnard* v. *Crosby*, 6 Allen, 327.

But it would not avail the appellant in this case if it could be made to appear that the instructions to which exceptions were taken were in any respect erroneous or defective. The object of submitting issues to the determination of a jury in cases like the one at bar is to ascertain whether any facts exist, the legal effect of which is to deprive the debtor of receiving a discharge from his debts under proceedings in insolvency. In this case the jury have found on a distinct issue, submitted to them under instructions to which no exception is taken, that the appellant, being a merchant or tradesman, did not keep proper books of account subsequent to July 6th 1856. This fact of itself, under Gen. Sts. *c.* 118, § 87, operates to deprive him of his discharge. It would seem, therefore, that all exceptions taken to the rulings of the court upon any other issue in the case are rendered wholly immaterial.

3. The separation of the jury without permission of the court before they had agreed on all the issues submitted to them was irregular and improper. But we cannot see that this misconduct of the jury ought to impair or affect the validity of their finding on other issues which were submitted to them, or that it should be allowed to operate to deprive the other party of the benefit of their verdict on the questions upon which the jury duly passed. It does not appear that the issues on which there was no verdict are so connected with or related to

those on which they rendered a verdict as to make it probable that their finding would have been different, if they had been obliged to determine all the issues submitted to them. As the case is presented on the exceptions, each issue was distinct and separate. Although some of the same elements may have been involved in all the issues, it is clear that no one was exactly identical with any other. It is therefore the unavoidable inference that the failure to reach a verdict on some of the issues did not result from inability to agree on any element common to all, but that it must have arisen from a disagreement on some fact peculiar to the issue on which the jury failed to agree. Such being the state of the case, we are of opinion that the verdict was rightly affirmed upon those issues on which the jury agreed, and that the appellees were properly allowed to waive those issues which were left undetermined. *Hayward* v. *French*, 12 Gray, 453, 460.

*Exceptions overruled.*