---

## Case No. 12,183.
### In re RYAN.
[2 Sawy. 411; [1] 5 Leg. Gaz. 263.]

District Court, D. Oregon. April 29, 1873.

BANKRUPTCY — TRADER — INSOLVENCY — PREFERENCE—ACT OF BANKRUPTCY—ATTEMPT TO RESCIND.

1. An innkeeper and retail dealer in liquor is a trader, and when he is unable to pay his debts as they become due, in money, he is insolvent, although his property may exceed in value the amount of his debts.

[Cited in Harris v. Hanover Nat. Bank, 15 Fed. 788.]

[Cited in Daniels v. Palmer, 35 Minn. 350, 29 N. W. 164.]

2. An insolvent debtor who prefers one or more of his creditors, necessarily thereby commits an act of bankruptcy.

3. Where it appears that a debtor gave a mortgage upon a large portion of his property, which mortgage purported to be given as security for a debt that in fact never existed, the reasonable conclusion is, that such mortgage was made to hinder and delay, if not to defraud, the creditors of such debtor, and is, therefore, an act of bankruptcy.

4. Where a debtor has committed an act of bankruptcy by giving an unlawful preference, or making a transfer of his property with intent to hinder, delay and defraud his creditors, he cannot discharge himself from his legal liability for such act by a subsequent rescission or undoing thereof.

Petition by F. Opitz and others to have the respondent [Thomas Ryan] adjudged a bankrupt. The cause was heard by the court without a jury, on April 22 and 23, and submitted.

John W. Whalley, for petitioners.

Richard Williams and O. P. Mason, for respondent.

DEADY, District Judge. At the filing of the petition—April 1, 1873, and since 1864—the respondent was engaged in keeping a tavern and bar in the city of Portland, Oregon, called the "Russ House."

The petition alleges that the respondent, being a trader and insolvent, committed acts of bankruptcy as follows: (1) That on January 29, 1873, he made a conveyance and transfer of the chattels in said Russ house to one Catharine Crinnion, with intent to thereby hinder, delay and defraud his creditors; and with the intent to give a preference to said Crinnion; and also with the intent to defeat and delay the operation of the bankrupt act. (2) That on February 12, 1873, he

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

made a payment to Henry Wilmer, and on March 1, thereafter, a payment to ——— Hunsaker, with intent thereby to give each of them a preference.

The answer of respondent admits the making of the conveyance and payments, but denies the insolvency, and that either such conveyance or payments were made with the intent alleged.

The evidence proves that at the dates of the alleged acts of bankruptcy, the respondent owed not less than $1,700, and that his assets consisted of the furniture and fixtures of the Russ house, worth in cash probably $1,200; a piece of land on the macadam road worth not to exceed $150, and book accounts for board against forty-six different persons, scattered over the coast, for sums ranging from $239 to $5—amounting in all to $2,954. Some of these accounts are twelve months overdue, one fourth of them are at least six months due, and only $200 or $300 were charged within two months before the commencement of this proceeding. The opinion of the respondent's barkeeper is that $1,500 of these accounts are good—that is, the persons who owe them will pay them when they get money, and he thinks they will have money sooner or later, and some of them before long. This, of course, amounts to nothing; there is really no evidence that a single dollar can be made on these accounts by law, and the strong probability is that they are not worth a cent. For the past nine months the respondent has been falling behind with his creditors, and the probabilities are that good accounts against boarders by the week would have been collected by him as they fell due.

It also appears that for at least six months prior to the filing of the petition, the respondent was unable, and so stated to divers of his creditors, to pay the debts incurred in his business as they became due, in money; and that during that term, for that reason, he procured an extension on $700 or $800 of said debts.

As to whether the respondent's property was sufficient to pay his debts at the date of these transactions, the burden of proof is upon him. Section 41, Bankruptcy Act [of 1867 (14 Stat. 537)]; In re Randall [Case No. 11,551]; In re Silverman [Id. 12,855]. The evidence furnished by the respondent upon this point is not satisfactory, and is altogether insufficient to establish the fact that this property could have been disposed of for cash at $1,700. It must also be borne in mind that the only portion of this property which appears to have had any market value, was the furniture; and to have sold this, or any considerable portion of it, would have broken up respondent's business at once; besides at least $300 worth of it was probably exempt from execution—the respondent being a householder.

But it is immaterial whether his property was sufficient to pay his debts or not. The

respondent was an inn-keeper and a retail dealer in liquors, and therefore a trader, and being confessedly unable to pay his debts in money as they became due, in the ordinary course of business, he was insolvent. In Toof v. Martin, 13 Wall. [80 U. S.] 47, the supreme court affirmed the ruling of the court below, which was that, "if the bankrupts" (who were traders) "could not pay their debts in the ordinary course of business, that is, in money, as they fell due, they were insolvent;" and to the same effect have been the decisions of the district courts. Indeed, it would be intolerable if a person in the situation of respondent, who refuses to pay the current bills of his baker, butcher and grocer as they become due, because he has no money to do so with, and at the same time pays and secures other creditors, could prevent the former from having him adjudged a bankrupt upon the doubtful ground that his property was equal in value to his debts, and therefore he was not insolvent.

The payments to Wilmer and Hunsaker are admitted, and the fact being that the respondent was then insolvent, the necessary effect of such payments was to give these creditors a preference, which was an act of bankruptcy. The necessary consequence of his acts the respondent is conclusively presumed to have intended, and therefore the denial in the answer of an intent to give a preference to these parties, is of no effect. In re Sutherland [Case No. 13,638]; In re Silverman [supra].

The conveyance to Crinnion is a mortgage which purports to have been given by respondent to secure the payment of a note of even date therewith, for $3,000 in coin, payable in one year, with interest at the rate of one per centum per month. The property included in it was probably three fourths in value of all the respondent possessed, subject to execution, and consisted of the furniture of the parlor and the sixty-one bedrooms in the Russ house. The instrument gave Crinnion power to take possession in case the note was not paid at maturity or at any time, in case she should "deem herself unsafe," and sell the property at public or private sale for the payment of the debt. The mortgage was filed on January 30, 1873, and on March 19 thereafter, purports to have been assigned by Crinnion, for "a valuable consideration," to one Annie English.

On the trial, Ryan testified that this note and mortgage was a scheme to raise money to pay his debts, but that no money was received upon it except $800 in currency, which was returned to English when she gave up the note, and the transaction was rescinded, because the whole amount of the $3,000 could not be raised. The note was not produced on the trial, and the mortgage still remains on file in the clerk's office unsatisfied and uncanceled. Ryan stated that the note had been lying on the wash-stand in his bedroom from the time it was returned to him,

until the day of trial, when it suddenly disappeared, and has not been found, and that the $800 received on the note was paid to and returned by his wife. Under the act (section 41), and upon general principles, the burden of proof is upon the respondent to show this mortgage to have been actually made upon the consideration and for the purposes expressed therein. The facts are peculiarly within his knowledge.

Neither Crinnion nor English are called as witnesses by him. or their absence attempted to be accounted for; while, upon the evidence, their very existence is even doubtful. As the case appears in court, there is no other conclusion reasonable, but that this mortgage was a mere sham and pretence from first to last. In point of fact, it was not true, as therein represented, that respondent owed Crinnion the sum of $3,000 in coin, but only $800 in currency, and it is doubtful whether even that sum was received until after the making of the mortgage, if at all. The assignment to English purports to have been made as late as March 19, and for a "valuable consideration," and although attested by counsel for respondent, no one was called to speak as to the amount or nature of such consideration, or the true character of the transaction. The strong probability is that this transfer is also a sham, and was put upon the instrument with the idea of giving color of good faith to the original transaction. The mortgage was left on file as an unsatisfied one, after, it is now claimed. the transaction was rescinded, apparently for the purpose for which it appears to have been originally made and placed there, to keep off and deceive his creditors; and to this effect was respondent's declaration to the witness Rohr. one of his creditors, as late as February 1. The power to enter and sell at "private sale" whenever the mortgagee might "deem herself unsafe," is a significant and suspicious circumstance, and might at any moment be used by the parties to this contrivance to put the barrier of another apparently innocent ownership between this property and the respondent's creditors.

The intent with which the transfer was made is a question of fact, but if the note and mortgage were fictitious, as it appears they were, then the only reasonable inference from the premises is, that it was done with intent to hinder and delay creditors, if not to defraud them. In re Drummond [Case No. 4,093]; Ecfort v. Greeley [Id. 4,260].

It is not an element of this act of bankruptcy that the respondent, at the time of committing it, should have been insolvent. A sale or transfer of property, with intent to hinder, delay or defraud creditors, is an act of bankruptcy, without reference to the solvency of the persons making it. In re Randal [Case No. 11,551].

On the argument, counsel for the respondent seemed to assume, that the inquiry as to his solvency was to be directed to the time

of filing the petition. Insolvency alone is never an act of bankruptcy. In this case, respondent being insolvent on February 12 and March 1, 1873, when he made payments to Wilmer and Hunsaker, he thereby committed an act of bankruptcy. But his even becoming solvent afterward, much less getting further time to pay his debts, would not condone or discharge this act of bankruptcy or prevent him from being adjudged a bankrupt therefor. And so with this mortgage; the question is, did the respondent, at any time within six months before the filing of the petition, make it with the intent alleged, and not did he afterward and before the filing of the petition recant and procure the same to be canceled or rescinded? When an act of bankruptcy has been once committed, the debtor cannot be relieved from the legal consequences thereof, except by lapse of time or an arrangement with the creditors, who have the right to sue on account of it.

I find that the respondent has committed the acts of bankruptcy alleged in the petition, and adjudge him a bankrupt accordingly.