In the matter of HENRY E. MANN, an Insolvent Debtor.

May 1, 1884.

Insolvency — Assignment — Provision for returning Surplus to Assignor.—An assignment made under our insolvent law (Laws 1881, c. 148) is not invalidated by a stipulation therein that any surplus which may remain in the hands of the assignee after payment of the releasing creditors shall be returned to the assignor.

Same—Property passes into Custody of the Court.—Upon the perfecting of such assignment, its entire subject-matter and everything involved in it, including the assigned property, come under the jurisdiction of the district court, *ipso facto*, and without the institution of any suit or proceeding.   By consequence, the assigned property is then *in custodia legis*.

Same — Fraudulent Intent of Assignor. — Such an assignment is not avoided by the fraudulent intent of the assignor in making it.

Creditors' petition in insolvency, in the district court for Ramsey county.   The petitioners, after alleging the insolvency of the debtor Henry E. Mann, a trader residing and doing business in that county, their own claims against him, etc., state that on January 14, 1884, in actions brought against him in the United States circuit court for Minnesota, one James A. Owens, who had property of Mann in his hands to an amount exceeding $15,000, and was indebted to Mann in an amount exceeding $25, was summoned as garnishee, and required to appear and make disclosure on June 16, 1884.   That more than 10 days have elapsed since the garnishments, but that Mann has taken no steps to vacate them or to release his property therefrom, or to defend the actions, nor has he made any assignment in accordance with Laws 1881, c. 148.

The petitioners further allege that on January 22, 1884, Mann made to Owens a pretended assignment of all his property not exempt from execution, for the benefit of such of his creditors as should file releases of their demands against him in accordance with Laws 1881, c. 148, and that it is claimed by Mann and Owens that this assignment is in accordance with that act, which the petitioners deny. They then allege that this pretended assignment was filed in the dis-

trict court for Ramsey county on January 23, 1884; that Owens, the assignee, qualified and took possession of the assigned property, and upon the filing of his schedules by Mann, on January 31, 1884, a bond in due form and approved by the district court was filed by the assignee.

A copy of the assignment is annexed to the petition. It recites the insolvency of Mann and the institution of the suits and garnishments mentioned by the petitioners, and, after charging the assignee with trusts in accordance with Laws 1881, c. 148, requires him, in case there shall then be any surplus, "to repay such surplus to the party of the first part, his heirs and assigns." The petitioners charge that this assignment was made by Mann to force his creditors into a compromise, and otherwise to hinder, delay and defraud them.

The petition was presented to the court on February 25, 1884, and an order was then made for a hearing on March 1, 1884, and directing that a copy of the petition and order be served on Mann, Owens, and on the attorneys, resident in St. Paul, of the non-resident plaintiffs in the garnishment suits in the federal court. Service was made accordingly. The plaintiffs in the garnishment suits did not appear. Mann and Owens appeared, and each interposed a general demurrer to the petition, and they appeal from an order of *Simons, J.,* overruling their demurrers.

*C. S. Rohrer,* for appellants, argued that as the assignor exacted releases and expressly reserved to himself any surplus, to the exclusion of creditors who failed to file releases and therefore were debarred from sharing in the assets, the assignment was void on its face; citing Burrill on Assignments (4th Ed.) § 209, *et seq.;* Bump on Fraud. Con. (3d Ed.) 436, *et seq.; Lapp* v. *Van Norman,* 19 Fed. Rep. 406; *Lawrence* v. *Norton,* 15 Fed. Rep. 853; *Lesher* v. *Getman,* 28 Minn. 93; *James* v. *Mechanics' Nat. Bank,* 12 R. I. 460.

*Rogers & Rogers,* and *O'Brien, Eller & O'Brien,* for respondent Mann.

*E. G. Rogers,* for respondent Owens.

BERRY, J. Our insolvent law (Laws 1881, c. 148) authorizes a debtor whose property is levied upon, directly or by garnishment, to make an assignment of all his unexempt property for the equal bene-

fit of all his creditors, (in proportion to their respective claims,) who shall file releases of their debts and claims against him with the *clerk of the proper court.* Section 1. Section 10 enacts that no creditor of any insolvent debtor shall receive any benefit under the act, unless he has first filed, with the clerk of the *proper district court,* a release to the debtor of all claims other than such as may be paid under the provisions of the act itself, and thereupon a *judgment* of discharge from such claims is to be entered in the debtor's favor: *provided,* that upon complaint to the proper *judge* by a creditor that the debtor has fraudulently concealed or fraudulently incumbered or disposed of any of his property with intent to cheat and defraud his creditors, a hearing may be had *before such judge,* and thereafter the *judge* may, in his discretion, order or direct that all of said debtor's property and assets, not exempt by law, be distributed among his creditors, either with or without the filing of releases. By section 3 the *court* is authorized at any time, upon satisfactory evidence, to grant an order restraining the debtor from collecting or disposing or in any manner interfering with any of his estate, to issue a *ne exeat* to restrain him from leaving the state, and to require him at any time to appear and make disclosure as to his property and estate. Section 8 allows an appeal to the district *court* from the disallowance of a claim by the assignee. For proper cause the *court* may remove an assignee and appoint another in his place, as also in place of an assignee who dies. Section 9. By section 12 distribution among the creditors of the balance remaining in the hands of the assignee, after the payment of the expenses of administering the assignment, etc., is to be made *under the direction of the court.*

The following conclusions appear to us to be fairly deducible from the provisions of the act:

*First.* As the act *authorizes* an assignment by the debtor for the benefit of such of his creditors *as shall release their claims against him,* it is, of course, implied that there may be creditors who will not release, and therefore will not participate in the benefits of the assignment. Consequently, there may be a surplus in the hands of the assignee after full payment of the claims of all the releasing creditors, as, of course, there possibly may be one even if all the creditors

release. To suppose that the assignee is to retain this surplus for his own benefit is absurd. It must be taken to be held by him for the benefit of the assignor. See *Wintringham* v. *Lafoy*, 7 Cow. 735. It does not follow that this surplus can be disposed of, either by the assignor or assignee, without the action of the court; but, unless it be intercepted in some way, as it well may be, upon a proper application by a non-releasing creditor, (*Brashear* v. *West*, 7 Pet. 609; *Smith* v. *Millett*, 11 R. I. 528; 12 R. I. 59,) the assignee would be ordered to pay it over to the assignor as a matter of course.

*Second.* Upon the perfecting of the assignment,—and to some extent, at least, upon the simple execution of it by the assignor, (see *Kingman* v. *Barton*, 24 Minn. 295,)—its entire subject-matter and everything involved in it, including the assigned property, come under the jurisdiction of the district court, *ipso facto*, and without the institution of any suit or proceeding. By consequence the assigned property is then *in custodia legis*. *Legierse* v. *Pierce*, (Tex. Sup. Ct.) 17 Reporter, 477. No more satisfactory proof of these conclusions can be required than is furnished by the terms and tenor of the insolvent act, and especially of those parts of it which we have cited. They confer upon the district court a supervisory authority and control of the whole business and matter of the assignment from the time when it is perfected until it is fully administered.

*Thirdly.* And as a consequence of the foregoing conclusions it follows—*First*, that a stipulation in an assignment that any surplus which may remain in the hands of the assignee after full payment of the releasing creditors shall be returned to the assignor, does not invalidate the assignment as a reservation of benefit to the assignor to the disadvantage of his creditors. This is so, because, whatever might have been the effect of such a stipulation irrespective of statute, our insolvent act clearly recognizes and contemplates the possibility of such surplus as one properly belonging to the assignor, so that the stipulation gives him no more than the law gives him without it, (*Conkling* v. *Carson*, 11 Ill. 503;) and, as we have seen, such a stipulation does not put the surplus out of the reach of non-releasing creditors. It follows, *secondly*, that the assignment is not avoided by the fraudulent intent of the assignor in making it. If this were not so,

one of the principal purposes of the insolvent act, as announced in its title, viz., "to secure the equal distribution of the property of debtors among their creditors," would be thwarted.   The assignment passes all the debtor's unexempt property, and the assignee is invested with power to attack fraudulent preferences and conveyances.   And in this latter particular the act materially differs from the Rhode Island act, involved in *James* v. *Mechanics' Nat. Bank*, 12 R. I. 460, referred to in *Lapp* v. *Van Norman*, 19 Fed Rep. 406, cited by appellant here. The act is in effect a bankrupt law, providing for voluntary bankruptcy by the debtor's assignment, (*Wendell* v. *Lebon*, 30 Minn. 234,) and in this respect it differs essentially from the assignment law, found in Laws 1876, *c.* 44, (Gen St. 1878, *c.* 41, §§ 23–33.)   The act expressly provides for the criminal punishment of fraudulent debtors. Section 3.   Indeed, the *proviso* before quoted from section 10 provides for a *penalty* to be imposed upon an assignor under the act who conceals, disposes of, or incumbers his property in fraud of creditors. The very theory of the act, then, as in case of bankruptcy acts in general, is that neither the assignment (corresponding to voluntary bankruptcy) nor the receivership (corresponding to involuntary bankruptcy) shall be invalidated by the fraudulent intent of the debtor, whether that intent be evidenced by preferences, by concealment or disposal of property, or otherwise.   Notwithstanding the fraudulent intent or act, the assignment is to stand, and the trust which attaches in favor of creditors upon its execution to be administered.   These considerations are enhanced by the fact that the assignment places the property *in custodia legis*,—in the hands of the court,—by which, whatever may have been the intent of the assignor, the assignment will be administered in accordance with the true spirit, meaning, and purpose of the law.   *Blum* v. *Welborne*, 58 Tex. 157.

Order affirmed.