MARK SIMON and another *vs.* HENRY E. MANN, Defendant, and JAMES A. OWENS, Garnishee.

## June 5, 1885.

**Insolvent Act of 1881—United States Circuit Court.**—The circuit court of the United States for the district of Minnesota is "a court of record of this state," within the meaning of section 1 of the insolvent law of 1881, (Laws 1881, c. 148.)

**Same—Assignee not Freeholder of State.**—An assignment for the benefit of creditors, made under the act cited, is not void because the assignee named is not a freeholder of this state.

On January 14, 1884, in an action against this defendant, commenced in the United States circuit court for the district of Minnesota, an indebtedness owing to the defendant was attached by garnishment.  Thereupon, on January 22, 1884, the defendant made an assignment under the provisions of Laws 1881, c. 148, for the benefit of those creditors who should file releases, to James A. Owens, who duly qualified and took possession of all the defendant's property.

The plaintiffs in this action duly recovered judgment against the defendant, in the district court for Ramsey county, on March 15, 1884, and on July 7, 1884, duly instituted garnishment proceedings against Owens.  From the disclosure of the garnishee it appeared that at the time of his appointment as assignee of defendant he was not a freeholder of this state.  The disclosure also set out in full the appointment of the garnishee as assignee, and that he had as such assignee a large sum of money in his hands.  The plaintiffs moved for

judgment against the garnishee upon the disclosure, and appeal from an order by *Simons*, J., denying their motion.

*C. S. Rohrer, Warner, Stevens & Lawrence,* and *Bigelow, Flandrau & Squires,* for appellants.

*Edward G. Rogers,* for respondent.

MITCHELL, J.　The questions raised on this appeal involve the construction of the following provisions of the "Insolvent Law" of 1881, (Laws 1881, *c.* 148:)

Section 1. "Whenever the property of any debtor is attached or levied upon by any officer, by virtue of any writ or process issued out of *a court of record of this state* in favor of any creditor, or garnishment made against any debtor, such debtor may ＊ ＊ ＊ make an assignment of all his property ＊ ＊ ＊ for the equal benefit of all his creditors, ＊ ＊ ＊ *which assignment shall be made in accordance with and be governed by the laws of the state of Minnesota relating to assignments made by debtors, except as herein provided.*"

Sec. 7. "All laws of the state of a general nature, applicable to receivers and assignments, and not in conflict with the provisions of this act, shall apply to assignees and receivers appointed hereunder, as the case may require."

The first contention of plaintiffs is that the precedent attachment or levy upon the debtor's property, essential to authorize him to make an assignment under section 1 of this act, must have been by virtue of a writ or process issued out of a state court; that the United States circuit court in and for the district of Minnesota is not "a court of record of this state." We think the point is not well taken. A federal court, sitting within the territorial limits of the state, is regarded as a domestic court, and its judgments as domestic judgments. Both state and federal courts in the state enforce and give effect to the same laws. The federal courts issue writs of attachment and garnishee process under and in accordance with the statutes of the state. In view of the scope and purpose of this insolvent law, we think that the circuit court of the United States in and for the district of Minnesota is a court of this state, within the meaning of the act referred to.

The plaintiffs further contend that if the assignee named in an as-

signment made under section 1 of this act is not a freeholder of this state, the instrument is void.   The act itself is silent as to the qualifications of assignees or receivers.   But Laws 1876, *c.* 44, § 1, (Gen. St. 1878, *c.* 41, § 23,) provides that "every conveyance or assignment made by a debtor or debtors of the whole or any part of their estate, real or personal, in trust to an assignee or assignees, for the benefit of creditors, shall be void *unless the assignee or assignees therein named are residents and freeholders of this state,* and unless such conveyance or assignment be in writing, subscribed by such debtor or debtors, and duly acknowledged,   *   *   *   and until such conveyance or assignment be filed in the office of the clerk of the district court," etc. The contention is that these provisions of the act of 1876, declaring an assignment void unless the assignee be a resident and freeholder of the state, are, by sections 1 and 7 of the act of 1881, adopted as a part of the latter act, and made applicable to assignments under it.

The determination of this question involves a comparison of the two statutes, and a consideration of the general scope and purpose of each.   The act of 1876 is entitled "An act to protect the creditors of assignors, and to regulate the duties of assignees."   That of 1881 is entitled "An act to prevent debtors from giving preference to creditors, and to secure the equal distribution of the property of debtors among their creditors, and for the release of debts against debtors." The former was designed merely to regulate common-law assignments. *Lesher* v. *Getman,* 28 Minn. 93.   The latter is a bankrupt act; the first section providing for voluntary bankruptcy, the second section for involuntary bankruptcy; the main object in either case being, as stated in the title, to secure an equal distribution of the debtor's property among his creditors.   *Wendell* v. *Lebon,* 30 Minn. 234; *In re Mann,* 32 Minn. 60.   The latter contains within itself ample provisions for securing this object, as against any fraud or misconduct on part of either assignor or assignee.   It provides for the recovery of any property fraudulently conveyed by the debtor, and for setting aside any preferences given by him contrary to the provisions of the act.   It also declares that upon the making of an assignment under section 1, or the appointment of a receiver under section 2, attachments and garnishments of the debtor's property shall be dissolved.

It gives the court full power to remove the assignee or receiver for cause, and to appoint another, and makes it its duty to do so upon vote of two-thirds in amount of the creditors. Upon the execution of the assignment, and filing it in court, the entire subject-matter and everything involved in it, including the assigned property, comes under the jurisdiction of the court *ipso facto*, and the assigned property is *in custodia legis*. *In re Mann, supra.* Hence, while we held (*Lesher* v. *Getman, supra*) that an assignment under the act of 1876 would be void, as before, by reason of the fraudulent intent of the assignor, yet (*In re Mann*) we held that an assignment under the act of 1881 is not invalidated for that cause, for the reason that a contrary doctrine would thwart the principal purpose of the act; that the very theory of the act necessarily implies that the assignment shall not be invalidated by the fraudulent intent of the debtor, whether that intent be evidenced by preferences, by concealment or disposal of property, or otherwise. Yet prior to the act of 1881 it was part of the law of this state applicable to assignments that fraud of the assignors in making them avoided them.

To hold an assignment under the act of 1881 void on account of the incapacity or disability of the assignee, would be equally inconsistent with the intent of the act, and would equally thwart its purpose. The selection of an incompetent assignee was, at common law, evidence of a fraudulent intent on the part of the assignor. The statute of 1876 makes the selection of an assignee not possessing certain qualifications conclusive on that point, so as to render the assignment for this cause *per se* void. If it be inconsistent with the intent of the act to hold an assignment void by reason of the fraud of the assignor, indicated by his concealing or disposing of part of his property, it would be difficult to say why it is not equally so where this fraud is indicated by his selecting an incompetent or disqualified person as assignee. The act provides a remedy for the one wrong as well as the other. The consequences of holding an assignment void for such cause can well be illustrated by the facts of the present case. An assignment is executed in due form, and is regular upon its face, and is filed in court. The court assumes control of the property; the assignee qualifies, and proceeds to execute the trust, under the direc-

tion of the court, and has reduced the most of the assets into cash. Creditors generally suppose in good faith that the assignment is valid. There is nothing on its face to indicate the contrary. The time has elapsed within which creditors might, under section 2 of the act, put the debtor into involuntary bankruptcy. Finally some creditor discovers that the assignee is disqualified because he does not own any real property in the state, and then attacks the assignment in some collateral action, perhaps in another court, and where all the parties interested in the assignment are not represented, has it adjudged void, takes the property out of the control of the court in which the assignment proceedings are pending, and applies it to the payment of his own debt, to the exclusion of other creditors. We can hardly conceive of any result that would be so contrary to the theory of the act, or that would so completely thwart its purpose. The scope and object of an act may be such as to render it as inconsistent with the provisions of another act as if expressly so in terms. The provisions of the act of 1876, that the assignment shall be void if the assignee is not a freeholder of the state, is so utterly at variance with the theory of the act of 1881, and so completely subversive of its principal purpose, that, in our opinion, it comes within the terms "except as herein provided," and "not in conflict with the provisions of this act," as used in its first and seventh sections.

Order affirmed.