MILTON J. DANIELS *vs.* H. H. PALMER, impleaded, etc.

July 6, 1886.

**Insolvency Defined.**—By the term "insolvent" as used in the insolvent law, (Laws 1881, *c.* 148,) at least when applied to a merchant or other trader, is meant inability to pay one's debts in the ordinary course of business, and not merely an inability to pay his debts in full at some future time, when his affairs shall be ultimately wound up.

The plaintiff, as receiver in insolvency of the estate of William S. Wells, brought this action in the district court for Goodhue county, to set aside transfers of real and personal property alleged to have been made by Wells to the defendant Palmer by way of preference. By consent of parties there was submitted to a jury the single question of fact, whether Palmer, when he received the transfers, had reasonable cause to believe that Wells was insolvent? At the trial before *Crosby*, J., the jury answered this question in the negative. A new trial was refused, judgment was entered for defendant, and the plaintiff appealed.

*Chas. C. Willson*, for appellant.

*W. C. Williston*, for respondent.

MITCHELL, J. This action was brought by plaintiff, as receiver, to recover certain property and money alleged to have been conveyed and transferred by defendant Wells, an insolvent debtor, to defendant Palmer, with a view of giving a preference to certain creditors, contrary to the provisions of the "insolvent law," Palmer having, at the time, *"reasonable cause to believe"* that Wells was insolvent. Laws 1881, *c.* 148, § 4. The court submitted to a jury the single issue whether, at the time of this transfer and conveyance, Palmer had reasonable cause to belive that Wells was insolvent. The court, in his charge, instructed the jury that "an insolvent is a person whose estate is not sufficient to pay his debts, or one who is unable to pay his debts from his own means. A person is solvent who has property subject to legal process sufficient to satisfy all his legal obli-

gations." An exception to this instruction raises the principal question on this appeal, viz.: What constitutes insolvency, within the meaning of this statute?

The term "insolvency" is not always used in the same sense. It is sometimes used to denote the insufficiency of one's entire property and assets to pay all his debts. This is its popular and most general meaning. *Herrick* v. *Borst*, 4 Hill, 650. But it is also used, in a more restricted sense, to express the inability of a person to pay his debts in the ordinary course of business. This is the sense in which it has been invariably held to have been used in all the various bankrupt acts of England and America.

In *Bayly* v. *Schofield*, 1 Maule & S. 338, it is said (p. 350) that "insolvency," as respects a trader means that he "is not in a condition to pay his debts in the ordinary course, as persons carrying on trade usually do," and (p. 353) "it does not follow that he is not insolvent *because he may ultimately have a surplus, upon the winding up of his affairs.*"

So, in *Shone* v. *Lucas*, 3 Dowl. & R. 218, it is said: "Insolvency, within the meaning of the bankrupt laws, does not mean an inability to pay 20 shillings in the pound, when the affairs of the bankrupt shall be ultimately wound up; but a trader is in insolvent circumstances *when he is not in condition to pay his debts in the usual and ordinary course of trade.*"

The same definition has been given of the term as used in the insolvent law of Massachusetts, which, in respect to the matter now under consideration, is very similar to our own. Gen. St. Mass. 1860, c. 118, § 89, (Pub. St. Mass. c. 157, § 96.)

In *Thompson* v. *Thompson*, 4 Cush. 127, Shaw, C. J., says: "By the term 'insolvency,' however, as used in these statutes, we do not understand an absolute inability to pay one's debts, at some future time, upon a settlement and winding up of all a trader's concerns; but a trader may be said to be in insolvent circumstances when he is not in a condition to pay his debts in the ordinary course, as persons carrying on trade usually do." This definition has been repeatedly reasserted by the same court. *Lee* v. *Kilburn*, 3 Gray, 594; *Ven-*

*nard* v. *McConnell*, 93 Mass. 555; *Barnard* v. *Crosby*, 6 Allen, 327.

The same construction has been placed upon the term as used in the late United States bankrupt act. Rev. St. U. S. § 5128.

In *Toof* v. *Martin*, 13 Wall. 40, the court, after referring to the more general and popular meaning of the word "insolvency," add: "But it is also used in a more restricted sense to express the inability of a party to pay his debts, as they become due, in the ordinary course of business. It is in the latter sense that the term is used when traders and merchants are said to be insolvent, *and, as applied to them, it is the sense intended by the act of congress.*" To the same effect, see *Wager* v. *Hall*, 16 Wall. 584, 599; *Buchanan* v. *Smith*, Id. 277, 308; *Dutcher* v. *Wright*. 94 U. S. 553; *Merchants' Nat. Bank* v. *Cook*, 95 U. S. 342.

That our statute is a bankrupt law has been repeatedly held by this court. *Wendell* v. *Lebon*, 30 Minn. 234, (15 N. W. Rep. 109;) *In re Mann*, 32 Minn. 60, (19 N. W. Rep. 347;) *Simon* v. *Mann*, 33 Minn. 412, (23 N. W. Rep. 856;) *Jenks* v. *Ludden*, 34 Minn. 482, (27 N. W. Rep. 188.) And when the legislature, in such an act, employed terms which had acquired this certain and well-understood meaning, as used in the various bankrupt acts of both England and the United States, it is to be presumed that they used them in the same sense.

It should be remembered, however, that formerly bankrupt laws applied only to "traders." This was true of the English statutes down to 1861. It was true of the United States bankrupt act of 1800, and substantially so of the involuntary bankruptcy features of that of 1841. Hence some of the definitions of the term "insolvent" were made with special reference to "traders." But later statutes, including our own, apply to all insolvent debtors, whether traders or non-traders. Now, the test of insolvency on the part of a merchant or other trader may not be strictly applicable to a farmer, mechanic, or other non-trader. The general abstract definition of "insolvency," as "inability to pay one's debts in the ordinary course of business," has reference to the usages of the trade or business in which the person is engaged, and of the place in which he is carrying it on. Even as applied to traders, this definition must be construed more or less with reference

to the habits and usages of the place where the debtor resides, and of the particular branch of business in which he is engaged; and, with reference to persons not engaged in trade or commerce, the term may therefore have a less restricted meaning than when applied to bankers, merchants, and the like. *Vennard* v. *McConnell, supra; Toof* v. *Martin, supra; Lee* v. *Kilburn, supra.*

In the case at bar it appears that Wells, in connection with a partner, was operating a flouring-mill, buying wheat, grinding it into flour, and selling it for a profit. He was also operating a warehouse, receiving in store and buying and selling grain. This constituted him a "trader," under any definition of that somewhat indefinite term. *Newland* v. *Bell,* Holt, N. P. 221; *King* v. *Simmonds,* 1 H. L. Cas. 754; *In re Ryan,* 2 Sawy. 411; *Re Smith,* 2 Lowell, 69; *In Matter of Eeles,* 5 Law Rep. 273; *Wakeman* v. *Hoyt,* Id. 309; Bouv. Law Dict. tit. "Trader." It follows that the definitions of the terms "solvent" and "insolvent," given by the court in this case, were erroneous.

Respondent urges that, even if this was so, it would be error without prejudice, because the solvency of Wells was not at issue; it being conceded that he was insolvent under either definition of the term. The fallacy of this position will be apparent on a moment's reflection. How could the jury determine whether Palmer had reasonable ground for believing Wells insolvent, without a correct understanding of what the term "insolvent" meant?

The appellant also assigns as error the refusal of the court to charge the jury that, if they found that the transfer from Wells to Palmer was not made in the ordinary course of business, but to secure a debt past due, that of itself was *prima facie* evidence of inability to pay his debts as they matured, and of the insolvency of the debtor. This request was properly refused. As an abstract proposition, it is not good law; and, if it was, it was irrelevant to the issue submitted to the jury. Of course, if the transaction was an unusual one, and not made in the ordinary course of business, that would be a fact for the consideration of the jury in determining whether Palmer had reasonable cause to believe Wells insolvent. But that was not the proposition embodied in the request.

Counsel for appellant, in his argument, criticises the charge of the court as to what constituted *"reasonable cause to believe that the debtor was insolvent."* We find no exception in the record which, in our opinion, raises any such question. We construe counsel's exceptions as having reference solely to the court's definition of "insolvency." We may add, however, with reference to another trial, that we think the charge on that point was correct. It was to the effect that actual knowledge, or even actual belief, of Wells's insolvency was not the criterion; but that the true inquiry was whether, as a reasonable man, acting with ordinary prudence, sagacity, and discretion, Palmer had, in view of all the facts and circumstances known to him at the time of the conveyance, reasonable cause to believe that Wells was insolvent. See *Coburn* v. *Proctor*, 15 Gray, 38.

As the only issue submitted to the jury was whether Palmer had reasonable cause to believe that Wells was insolvent, we do not think that the question whether the $8,000 cash was transferred to Palmer as his own property, or as agent for Wells, ought to have been referred to the jury for consideration. It had nothing to do with the issue submitted to them, and was calculated merely to confuse and mislead them.

For the errors suggested, the judgment must be reversed, and a new trial ordered.

Judgment reversed.