STATE V. STEVENS.

1. In the prosecution of a bank cashier for receiving a deposit after the bank's insolvency, under an indictment alleging that the bank was a corporation, it is sufficient proof of defacto corporate existence to show that an attempt was made to organize a corporation, and that the institution was conducted and held out to the public as a corporation, and that a statute existed at the time of the indictment authorizing such incorporation, though no such statute existed when the attempt to organize was made.

2. In a prosecution of a bank cashier for receiving a deposit after the bank's insolvency, false statements made by him to the public bank examiner tending to establish the allegation of the indictment that the bank was a corporation, and also to show insolvency, and the accused's guilty knowledge thereof, are admissible, though constituting an independent offense.

3. In the prosecution of a bank cashier for receiving a deposit after the bank's insolvency, the testimony of a witness that one of his long overdue notes, given to the bank, was accommodation paper, and the introduction of his written assumption of its payment, executed concurrently with the note, are admissible as pertinent to the issue of insolvency.

4. In a prosecution of a bank cashier for receiving a deposit after the bank's insolvency, it was proper to permit the depositor to refresh his memory as to the denomination of the money deposited by referring to the original deposit slip, written by him at the time of the deposit.

5. In a prosecution of a bank cashier for receiving a deposit after the bank's insolvency, the bank books being in evidence, it was proper to permit the public bank examiner, who had inquired into the financial condition of the bank; to refresh his memory by referring to a memorandum made at the time of such examination.

6. In a prosecution of a bank cashier for receiving a deposit after the bank's insolvency, it was error to permit the public bank examiner, who had examined the affairs of the institution, to testify, as a conclusion, that the bank was insolvent; that being an ultimate fact for the determination of the jury.

7. It was proper, as bearing on the issue of insolvency, to permit a witness who had been appointed receiver of the bank after its voluntary closing to relate in detail what he had done to collect the various notes coming into his hands, and to state that he could not tell when any of them would be paid.

8. In a prosecution of a bank cashier for receiving a deposit after the bank's insolvency, farfetched statements, partially from memory, made by the receiver relative to the unauthenticated indebtedness of the bank to other banks, and testimony as to numerous transactions pertaining to the adjustment thereof, were incompetent, because of a secondary character; the bank books being the best evidence.

9. Where in a prosecution of a bank cashier for receiving a deposit after the bank's insolvency, a witness for the state admitted on cross-examination that he was prejudiced against the accused, it was improper to permit him on redirect examination to explain his prejudice by stating that as county treasurer, he had deposited public funds with the bank, and had been compelled to reimburse the county therefor.

10. Under Comp. Laws, §6850, punishing the receipt of a deposit by a bank officer when the bank is insolvent and the officer knows of such insolvency, the term "insolvent" means a present inability to pay depositors as banks usually do, and meet all liabilities as they become due in the ordinary course of business.

(Opinion filed November 26, 1902.)

Error to circuit court, Davison county, Hon. FRANK B. SMITH, Judge.

Fred L. Stevens was convicted of receiving, as cashier, a

deposit made with an insolvent bank, and he brings error. Reversed.

H. F. Fellows, W. C. Cook, and Aikens & Judge, for plaintiff in error. A. W. Burtt, Atty. Gen., A. H. Henneous, States Atty., Preston & Hannett, for the state.

FULLER, J. Plaintiff in error was sentenced to a penetentiary term of four years and six months on a verdict of guilty resulting from a trial under an indictment which charges that: "Fred L. Stevens, late of said county, heretofore, to-wit, on the fourth day of January, A. D. 1900, at the county of Aurora and state of South Dakota, then and there being the cashier of the Bank of Plankinton, a corporation duly organized under the laws of the territory of Dakota, and then and there duly existing as such corporation under the laws of the state of South Dakota, said corporation being then and there engaged in the banking business at the city of Plankinton, in said county and state, and being then and there insolvent, did then and there feloniously and knowingly receive on deposit into and for the Bank of Plankinton as cashier thereof, from and of one Seth Noble, the sum of one hundred and forty-five dollars, in good and lawful money of the United States, the said Fred L. Stevens, as cashier aforesaid, at the time of receiving said deposit well knowing then and there of such insolvency of the Bank of Plankinton, whereby the said deposit of one hundred and forty-five dollars, lawful money of the United States, was lost by the said Seth Noble, to his great damage and injury." The statute provides that "no bank, banking house, exchange broker, or deposit office or firm, company, corporation or party engaged in the bank-

ing, broker or deposit business, shall accept or receive on deposit, with or without interest, any moneys, bank bills, or notes, or United States notes, or United States treasury notes, or currency, or other notes, bills or drafts circulating as money or currency, when such bank, banking house, exchange broker, or deposit office, firm, company or corporation or party is insolvent; and if such bank, banking house, exchange broker; or deposit office, firm, company, corporation or party shall receive or accept on deposit any such deposits as aforesaid when insolvent, any officer, director, cashier, manager, member, party or managing party thereof, knowing of such insolvency, who shall knowingly receive or accept, be accessory, or permit or connive at the receiving or accepting on deposit therein or thereby, any such deposit as aforesaid, shall be guilty of a felony and upon conviction shall be punished" as therein provided. Comp. Laws, § 6850.

When the Bank of Plankinton was organized, there was no statute authorizing such incorporation, and the nonexistence of a de jure corporation stands proved, and is conceded by the prosecution. That there can be no de facto corporation unless the statute authorizes the formation of a de jure corporation is too clear to admit of any dispute, and, consonant with such doctrine this court has held "that there can be no de facto officer without a de jure office." Thurber v. Miller, 11 S. D. 131, 75 N. W. 901. As none of the essential elements of an estoppel in pais are present in this case, we need not determine whether such equitable doctrine of estoppel by conduct should preclude a defendant in a prosecution of this character from speaking the truth. It was clearly shown by the undisputed testimony that the Bank of Plankinton was

holding itself out to the public and doing business as a corpo-
ration at the time charged in the indictment, and that banking
corporations were then recognized by the statute expressly
providing for their creation is a matter that must be judicially
noticed. Articles of incorporation, formulated at the incep-
tion of the business, were filed with the territorial secretary
on the 27th day of November, 1885; and continuously since
that date the managing officers, apparently in good faith, have
transacted a banking business thereunder in the corporate
name of the Bank of Plankinton. Such exercise of corporate
functions pursuant to a bona fide attempt to organize, and the
existence of a statute under which a banking corporation, with
all the powers assumed might have been lawfully created at
the time alleged in the indictment, is sufficient to constitute
a de facto corporation, and meet the requirements of this
prosecution against its chief executive officer. People v.
Hughes, 29 Cal. 258; People v. Schwartz, 32 Cal. 160; Maxw.
Cr. Proc. p. 67. Speaking for the court in U. S. v. Amedy, 11
Wheat. 302, 6 L. Ed. 502, Mr. Justice STORY said: "This is
not the case where a suit is brought by the corporation to en-
force its rights, where, if the fact of its legal existence is put
in controversy upon the issue, the corporation may be called
upon to establish its existence. The case of Dutch West India
Co. v. Van Moyses, cited in 2 Ld. Raym. 1535, as decided be-
fore Lord King, whatever may be its authority, was of that
sort, and therefore carries with it an obvious distinction; nor
is this the case of a quo warranto, where the government calls
upon the company to establish its legal corporate powers and
organization. The case here is of a public prosecution for a
crime, where the corporation is no party, and is merely col-

laterally introduced as being intended to be prejudiced by the commission of the crime. Under such circumstances, we think, nothing more was neccessary for the government to prove than that the company was de facto organized, and acting as an insurance company and corporation.

In his official capacity the accused made sworn statements to the public examiner, during the year 1899, purporting to show the financial condition of the Bank of Plankinton on March 11th, June 30th, and October 3d of that year, and these statements were admitted in evidence over the following objection: "Defendant objects because they are irrelevant, and specifically at this time, as grounds for objection, that the undisputed evidence in this case shows that there is a material variance between the indictment and the facts proyen regarding the deposit of money and the alleged incorporation of the Bank of Plankinton; that it appears by proof offered by the state that the Bank of Plankinton is not a duly organized corporation, created and existing as alleged in the indictment, but that it appears that the pretended incorporators of the Bank of Plankinton, failing to incorporate, became partners, and, as partners, were jointly and severally liable for the debts of the concern; that upon a verdict of either acquittal or conviction in this case the defendant could not plead in bar, and show by the record, without extraneous evidence, that the charge contained in this indictment was the same as one that might be made against him for receiving the the same deposit while acting for the partnership which we claim the law established as proven by the evidence in this case. For that reason the variance between the proof and the indictment is material, and no evidence is relevant or admissible, tending further to prove the

condition of the pretended corporation. And for the further reason that the evidence conclusively shows the failure of proof by the depositor of the reception of lawful money of the United States, and that this is a fatal variance." These official statements not only establish the allegation that Fred L. Stevens was cashier of the Bank of Plankinton, doing business as a corporation, in the county of Aurora and state of South Dakota, but, when considered with other competent testimony in the case, tend to disclose certain irregularities bearing upon the question of insolvency and guilty knowledge on the part of the accused. As this material evidence was properly identified, and came unchanged from the actual possession of its lawful custodian, none of the reasons specified in the objection offered at the trial, or urged in the brief of counsel for plaintiff in error, justify its exclusion. Assuming, as contended by counsel for the accused, that these false statements as to the financial condition of the bank tended to prove an independent offense, they undeniably form a part of the res gestæ, bear directly upon the charge for which the accused was being tried, and are safely within the well-recognized exception to the rule that evidence of an extraneous crime is inadmissible, State v. Halpin (16 S. D. 170) 91 N. W. 605.

Pertinent to the issue of insolvency at the time the deposit was received, and bearing upon the question of availability as an asset in the hands of the receiver, it was proper to allow the witness Rogers to testify that one of his long overdue notes, produced at the trial, was given without any consideration, as a mere accommodation to the accused; and the introduction in evidence of his written assumption of its payment, executed concurrently with the original note, was not erroneous. As

between the parties, and until negotiated, such accommodation paper has no value, and the accommodating maker may at any time rescind his apparent obligation, and demand a surrender of the instrument. Tied. Com. Paper, 158.

By referring to the original deposit slip written by Seth Noble at the time of the transaction complained of, and presented to the bank with the deposit described in the information, that witness was permitted, according to the daily and universally approved practice, to refresh his memory as to the denomination of the money received by the accused, and such action of the trial court is sustained without comment.

The public examiner officially inquired into the financial condition of the bank soon after the accused received the deposit of the prosecuting witness, discontinued business, and left the state; and a studious examination of his entire testimony, which is too voluminous to justify repetition, leads to the conclusion that there was no error in allowing such officer to refresh his memory from an exhaustive memorandum made by himself at the time of the examination, about which he had testified specifically. The books of the bank being in evidence to confirm the various mathematical computations of the examiner, the method employed receives daily judicial sanction; and his testimony, so far as it relates to resources and liabilities, was competent to aid the court and jury in correctly summarizing the multitudinous items and entries contained therein.

Over the objection of opposing counsel, but consistent with an Iowa case (State v. Cadwell, 44 N. W. 700), this same witness was permitted to state, in response to a question propounded by the prosecution, that the bank was insolvent at the time its doors were closed pursuant to the direction of the plain-

tiff in error.  As lawyers do not agree upon the import of the word "insolvent," as used by the legislature, and a layman is not presumed to possess the faculty of nice discrimination with reference to such matters, the exact meaning of the witness by the use of the term is not ascertainable.  The result of mathematical computation as to assets and liabilities might materially aid the jury in arriving at the ultimate fact of solvency or insolvency, but it was not the province of the witness to finally determine the most essential element of the offense charged in the indictment.  Where, as in this case, insolvency is an ingredient of the crime, and the fact of the deposit described in the indictment stands proved, the witness might with equal propriety be asked to express his opinion as to the guilt or innocence of the accused.  In conformity with the universal doctrine, overlooked by the Iowa court, a recent text writer makes the following cautionary statement:  'Whatever liberality may be allowed in calling for the opinions of experts or other witnesses, they must not usurp the province of the court and jury by drawing those conclusions of law or fact upon which the decision of the case depends."  Jones, Ev. 374.  It was for the jury to determine from all the evidence, viewed in the light of proper instructions, whether the bank was insolvent, beyond a reasonable doubt, when the accused received the deposit. Noonan v. State, 55 Wis. 258, 12 N. W. 379; State v. Bowman, 78 N. C. 509.  Even in civil cases it seems to be quite uniformly held that experts cannot give opinions as to ultimate facts that the jury must decide.  Insurance Co. v. May, 20 Ohio, 212; Seliger v. Bastian, 66 Wis. 521, 29 N. W. 244; Hoener v. Koch, 84 Ill. 408; Tingley v. Cowgill, 48 Mo. 292; Tetrault v. O'Connor (N. D.) 76 N. W. 225.

While the voluntary closing of the bank, immediately fol-
lowing the receipt of the money described in the information,
and the refusal to pay depositors on demand, is suggestive of
present inability to pay in the ordinary course of business, it
was allowable to permit the witness Auld, who had been duly
appointed receiver of such bank, to relate in detail what he
had done in the way of an effort to collect the various promis-
sory notes coming into his hands, and to state that he could not
tell when any of them would be paid. This and other testi-
mony of similar import, so far as effective for any purpose,
slightly tended to enlighten the jury as to the financial condi-
tion of persons indebted to the bank, and the net value of its
assets, at the time the alleged deposit was made. Thus the
testimony of the receiver as to the resources and liabilities of
the Bank of Plankinton was admissible, in so far as it related
to properly identified records produced in court, or to promis-
sory notes, warrants, and other bills receivable introduced at
the trial; but his farfetched statements, partially from mem-
ory, relative to the unauthenticated indebtedness of the Bank
of Plankinton to certain other banks, and to numerous trans-
actions of his pertaining to the adjustment thereof by the use
of funds coming into his hands as receiver, presuppose the
existence of better evidence, and are hearsay, secondary, and
incompetent. According to a rule of universal acceptance and
inveterate employment, bankers keep books showing, among
other things, the state and nature of their accounts with other
banks; and if the receiver had used the funds of the bank to
redeem many thousand dollars worth of assets pledged by the
accused as collateral security to the First National Bank of
Chicago, First National Bank of Mitchell, and Security Nation-

al Bank of Sioux City, his oral statements concerning such fact, and recollection of many items relative thereto, cannot be substituted for the vouchers, records, and primary evidence of the various transactions.

With the mere suggestion that the testimony of J. D. Bartow was without probative substance, and in no manner injurious to the defendant, we proceed to determine whether a witness who admits on cross-examination that he is prejudiced against the accused may be interrogated by the prosecution as to the cause of such hostility. Mike Gales, the county treasurer, and witness for the prosecution, having stated on cross-examination that he was not on friendly terms with the accused, was allowed to testify on redirect examination, and over the objection of counsel for the latter, that, as a customer of the Bank of Plankinton, he deposited public funds with the accused, and had been required to reimburse the county in the sum of $2,900. While it is rudimentary in the law of evidence that a cross-examiner may interrogate an opposing witness concerning his unfriendliness to the person against whom he testifies, it is not permissible for the party calling such witness to elicit a detailed statement of the facts and circumstances causing such unfriendliness. The feeling entertained by the witness toward the accused is shown for the purpose of aiding the jurors in the process of weighing his testimony, but the cause of such feeling would tend to divert their minds from the case on trial, and lead to a multiplicity of issues. The purpose of such inquiry being fully attained when the bias of the witness is shown, the reason therefor is immaterial, purely collateral, and a matter of no concern to the jury. People v. Goldenson, 76 Cal. 328, 19 Pac. 161; Butler v. State, 34 Ark. 480; State v. Glynn, 51 Vt. 577; Polk v. State, 62 Ala. 237.

Without invading the province of the jury as to the facts, it may be suggested that the testimony produced tends to show the insolvency of the Bank of Plankinton at the time the money described in the information was received as a deposit, and the questions determined in this opinion will enable the trial court to correctly charge as to the law of the case.

As employed in the statute with reference to banks, the word "insolvent" means a present inability to pay depositors, as banks usually do, and meet all liabilities as they become due in the ordinary course of business. State v. Cadwell, supra; Daniels v. Palmer, 35 Minn. 347, 29 N. W. 162; 16 Am. & Eng. Enc. Law (2d Ed.) 636, and numerous cases there collated.

Questions discussed as to the manner of obtaining a jury, as well as the gratuitous statement of the prosecuting attorney concerning the wishes of the people of the county from which the trial of the case had been transferred, are points not likely to arise at any future stage of the prosecution, and therefore require no attention.

The judgment of conviction is reversed, and the case remanded for a new trial.